119   9
.175 618

119   9
186 ²530

119   9
198 ³124

119   9
200 ⁴335

119   9
114a ⁴140

FRED BENNITT et al.

v.

THE WILMINGTON STAR MINING COMPANY et al.

*Filed at Ottawa May 15, 1886.*

1. MECHANIC'S LIEN—*as against a purchaser—time of commencing suit—and as to new parties.* A mechanic's lien may be enforced against a purchaser of the property, if the suit is brought for that purpose within six months after the last payment falls due. The filing of the petition is the institution of the suit, and when a new party is made by amendment, the suit is brought, as to him, from the date of the amendment.

2. PARTY—*to enforce mechanic's lien—trustee.* In a proceeding to enforce a mechanic's lien against property incumbered by a deed of trust, the trustee, as well as the *cestui que trust,* is a necessary party; but if the *cestui que trust* allows a decree to pass upon the merits, without the trustee having been made a party, he, and those claiming under him, will be bound by such decree.

3. FORMER ADJUDICATION—*binding as to matters that might have been decided.* The doctrine of *res judicata* embraces not only what has been actually determined in the former suit, but also extends to any other matter properly involved, and which might have been raised and determined in it. Therefore, a decree on the merits is conclusive as to all defences that might have been interposed.

4. SAME—*extent of application of the rule.* The conclusive effect of a former adjudication sometimes applies to persons not parties to the record,

and who have not acquired rights *pendente lite.* Persons on whose behalf and under whose direction a suit is prosecuted or defended, in the name of some one else, will be equally concluded by the judgment or decree in such suit.

5.  SAME—*parol evidence to connect person with judgment or decree.* In order to show that a person not a party to the record is concluded by the judgment or decree in a suit, parol evidence is admissible. This may be shown by proof that he conducted or managed the case in the name of another, and that he employed and paid counsel in the case.

6.  ESTOPPEL—*to assail a title warranted.* ·Where a party in his deed covenants that he has not done, or suffered to be done, anything, whereby the property therein described was or might be in any manner incumbered or charged, and that he will forever defend the premises against all persons lawfully claiming, or to claim, the same, through or under him, such covenant will, in equity, estop him from collecting a judgment in his favor out of such property.

7.  CHANCERY—*party seeking relief must do equity.* It is a maxim in courts of equity, that he who seeks equity must do equity. So where one party has freed real estate in dispute from a subsisting lien, by a redemption from a sale, the other party availing of the removal of the lien must offer to repay the sum so advanced by his adversary in making the redemption.

·  APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Grundy county; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. JORDAN & WING, for the appellants.

Mr. GEORGE S. HOUSE, for the appellees.

Per CURIAM: After a careful examination of the record in this case, and a full consideration of the elaborate arguments presented upon the questions involved, we perceive no error in the decision of the Appellate Court. The questions involved have been fully considered and elaborated in the opinion of the Appellate Court, by BAKER, J., in which we concur. Cross-errors have been assigned by appellees, but we do not regard them well taken. A sufficient discussion of the questions raised by the cross-errors will be found in the opinion of the Appellate Court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

The opinion of the Appellate Court above referred to is as follows:

BAKER, J.: The facts involved in this case are very numerous and quite complicated, and in the view we take of the merits of the controversy, it is necessary to state but comparatively few of them, and these may properly be referred to in connection with the points it is deemed essential to consider and decide.

*First*—The Coleman Gas Works Manufacturing Company filed its petition for a mechanic's lien, in the circuit court of Grundy county, on the 14th day of September, 1875, against the Coalfield Coal Company, Charles H. Goold, and H. Leroy Thayer,—and it is admitted that this was within the six months after the last payment for labor and materials became due and payable, that is allowed by section 28 of the Lien law for the institution of a suit for the purpose of enforcing such lien, in order to make it effective as against other creditors and incumbrancers. It appears, however, that the Coalfield Coal Company parted with its title to the hotel premises in question after the petition was filed, but before jurisdiction of its person was acquired, by the service of process or otherwise. We understand the claim of appellees, made in this behalf, to be, that in such case, one who purchases from the owner of the land and defendant to the petition, takes the title to the property forever freed from the lien created by the statute. This position is not tenable, and for several reasons. In the first place, a purchaser is not within the protection of this section, as he is neither a creditor nor an incumbrancer. It was expressly so held in *Dunphy* v. *Riddle*, 86 Ill. 22. In the second place, the statute saves the right of the holder of the lien, if suit is instituted to enforce such lien within the six months limited for such purpose; and it has been decided that the proceeding under the Statute of Liens is a chancery proceeding, and that the filing of the petition is the institution of the suit. (*Work* v. *Hall*, 79 Ill.

196; *Dunphy* v. *Riddle, supra.*) And, in analogy, where an amendment is allowed making a new party defendant to the petition, the suit is brought, as to him, at the time of the amendment. (*Crowl* v. *Nagle,* 86 Ill. 437.) If the rule were as is urged, then this Lien law would afford but scanty protection to those whom it is intended to benefit, for the owner might, in every instance, by simply evading service of process, have both power and opportunity to either sell, or incumber to the full value of the land, and thereby render nugatory the plain intent of the statute.

*Second*—It is objected by appellees to the validity of the decree that was entered in the mechanic's lien suit, as affecting their rights, that on the 27th of July, 1875, and prior to the filing of the petition, the Coalfield Coal Company executed to Frank Goodspeed, as trustee, a trust deed, to secure the payment of $4750 to Goold and Thayer, and that while Goold and Thayer, the *cestuis que trust,* were made parties to the proceeding, yet the trustee was not, and that they were each and all necessary parties. We understand the general equity rule to be as is claimed. (*McGraw* v. *Bayard,* 96 Ill. 146; *Scanlan* v. *Cobb,* 85 id. 296; Story's Eq. Pl. sec. 207.) The first cited case is directly in point, and it was there decided that where a trustee is interposed between lender and borrower merely for the purpose of enabling the lender to obtain payment through the exercise by the trustee of powers conferred upon him, both trustee and *cestui que trust* must be made parties. It is also true that it was held in *Crowl* v. *Nagle,* and *Dunphy* v. *Riddle,* that where there is an existing incumbrance at the time the suit is brought, and the incumbrancer is not, within six months after the last payment becomes due, made a party to the petition, then the lien of the mechanic will be postponed to that of the incumbrancer.

In order to properly apprehend this matter of the omission of the trustee as a party defendant in the lien proceeding, it is necessary to briefly state a few additional facts that appear

in the record.   On the second day of May, 1876, Goodspeed made a sale, under the provisions of the trust deed, of the premises, and conveyed them to Goold and Thayer, who were purchasers at such sale.   On the third day of October, 1876, Goold and Thayer entered into a written contract with Ira F. Benson for the future conveyance of the property to him, Benson.   On November 22, 1876, Benson assigned his interest in the contract, and made a quitclaim deed of the premises to the Wilmington Star Mining Company, one of the appellees herein.   On the 18th day of December, 1878, the mechanic's lien suit, a former decree therein having been reversed by the Supreme Court and the cause remanded, was still pending and undetermined in the Grundy circuit court.   At that time the three defendants to the petition,—the Coalfield Coal Company, Goold, and Thayer,—filed answers to it, for the first time; and the only persons who then had any interest in the premises upon which the lien was sought to be enforced, were the two latter and the Wilmington Star Mining Company. The title of the Coalfield Coal Company had long prior been divested by the sale under the trust deed.   The suit had become *lis pendens,* in respect to Thayer, on the 28th of October, 1875, by the service of process on him; but it is questionable whether it became *lis pendens,* with reference to Goold and the Coalfield Coal Company, before their answers were filed. Assuming that Goold and Thayer, by the failure of the petitioners to make Goodspeed, the trustee, a party to the proceeding, and by the conveyance from such trustee, were in a position to insist the lien could not be made effective to their prejudice, then it was their bounden duty to interpose such defence in the pending litigation.   The petition charged that Goold and Thayer were interested in the real estate covered by the lien, as mortgagees or otherwise, and prayed for a lien, and that the lots might be sold clear of all incumbrances. If these parties to the suit had a valid defence to the enforcement of the lien, as against any rights they were vested with,

they should have disclosed it; and if they either did or did not do so, the binding force of the lien is *res judicata* as between them and their privies, and all parties claiming under the decree. That decree necessarily affirmed the validity of such lien as against whatever right or title the defendants therein possessed, for the court expressly found and decreed that the "petitioner is entitled to a first lien upon said premises," and it is conclusive upon the parties and their privies. The doctrine of *res judicata* embraces not only what has actually been determined in the former suit, but also extends to any other matter properly involved, and which might have been raised and determined in it. *Hamilton* v. *Quimby,* 46 Ill. 90; *Rogers* v. *Higgins,* 57 id. 244; *Kelly* v. *Donlin,* 70 id. 378; *Ruegger* v. *I. & St. L. R. R. Co.* 103 id. 449. In Bigelow on Estoppel, p. 46, note, it is said: "It follows, also, from the authorities considered, that a valid judgment for the plaintiff sweeps away every defence that should have been raised against the action,—and this, too, for the purposes of every subsequent suit, whether founded on the same or a different cause." See, also, *Gage* v. *Ewing,* 107 Ill. 11, and *Scates* v. *King,* 110 id. 456.

This rule of the binding and conclusive effect of a former adjudication has a still broader application than we have thus far stated, and will include not only Goold and Thayer, but the Wilmington Star Mining Company. Sometimes persons who are not parties to the record, and have not acquired interests *pendente lite,* are bound by the judgment or decree. Persons on whose behalf and under whose direction the suit is prosecuted or defended in the name of some other person, fall within this category; and in such cases parol evidence is admissible to show who are the real parties in interest, and that they conducted the litigation in the names of other persons. Freeman on Judgments, sec. 174, and authorities cited in notes.

In the case of *Cole* v. *Favorite,* 69 Ill. 457, the Supreme Court of this State recognized and approved this extension of the principle of *res judicata,* and there said: "The suit in the Federal court, although in the name of appellee, was prosecuted at the request of and for the benefit of appellant. He advised and directed it, was a witness therein, and while he was not formally a party to the record, he was a party in interest, and must be regarded a privy." The parol evidence conclusively shows that the Wilmington Star Mining Company employed the attorney who sued out and prosecuted the writ of error from the Supreme Court, to bring before it the record of the first decree entered in the lien suit, and upon which it was reversed, and employed the attorney who made the defence that was interposed both before and at the time the decree now in question was rendered, and who afterward litigated the matter, on error, in the Appellate Court, and not only paid the fees of such attorney, but all the other expenses of the defence.

One or two other matters may properly enough be noted in this connection. The rights of the Wilmington Star Mining Company are based upon and have their origin in the Goold, Thayer and Benton contract of October 3, 1876, and it was possessed of such rights when it employed counsel, and made defence to the suit for mechanic's lien. The corporation also had a claim or color of title to the hotel property, through a quitclaim deed executed by the Coalfield Coal Company on the 22d of November, 1876. This supposed title we have ignored in our consideration of the case, and for the simple reason that all right and title of the coal company had passed out of it on the 2d of May, 1876, by virtue of the sale and conveyance made by Goodspeed under the deed of trust, so that nothing was conveyed by this deed of November 22. Mary S. Buchanan, the other appellee herein, derives her interest in the premises as follows: On January 3, 1880, Goold transferred his interest in the land, and in the Goold, Thayer

and Benson contract, to Isabella Clark and Bacon Wheeler. On the 28th of March, 1881, Isabella Clark transferred her interest so acquired therein, to said Wheeler, and Wheeler died on the 26th of May, 1882, having devised the interest vested in him, to her, the said Mary S. Buchanan, and Thayer, by deed dated December 5, 1883, also conveyed his interest in the premises to her.

Our conclusion, then, upon this branch of the controversy is, that in respect to the right and title now held by the Wilmington Star Mining Company, the validity of the mechanic's lien, as a first lien, is *res judicata;* that with reference to the right and title of Mary S. Buchanan, derived through Goold, the rule of *lis pendens* will apply, as the transfers from the latter were made in 1880, and the mechanic's lien proceeding became *lis pendens*, as to Goold, on the 18th of December, 1878, if not sooner, and continued to be such until the entry of final decree on the 20th of December, 1881; and the law of *lis pendens* is, that an alienation of the subject matter of the controversy made *pendente lite*, is void against the judgment or decree finally rendered in the suit. In respect to the title derived by Mary S. Buchanan from the Thayer deed of 1882, it is sufficient to say, that conveyance was executed long after the decree, for the lien was entered in a suit to which the grantor was a party, and, of course, such title was subject to the lien of the decree.

*Third*—It appears from the record, that at the time the mechanic's lien petition was filed, one of the five incumbrances, in the nature of either mortgages or trust deeds, that had been placed upon the hotel lots and were then subsisting liens, was a mortgage to H. Leroy Thayer, dated April 1, 1875, to secure eleven notes, of $1000 each, and one note of $1500, making $12,500 in all. The point is made as against the binding force of the mechanic's lien decree, so far as the rights of appellees are concerned, that four of the notes for $1000 each, and the note for $1500, were sold and transferred

by Thayer prior to the filing of the petition, and that the holders of said notes were not made parties to the bill within six months from the time the money was due for the work and material furnished, and that afterward the amounts due on said notes were included in the decree entered in the Grundy circuit court, in the cause of the bill filed by the Wilmington Star Mining Company, against Thayer, for specific performance, and wherein specific performance was awarded upon payment of the amounts due Thayer, which amounts were there determined and decree therefor rendered, and which decree was, subsequently, upon payment by her of the full amount thereof, assigned to Mary S. Buchanan. It is urged that the assignees and then holders of each of these notes stood in the light of a mortgagee, and should, within the time limited by the statute, have been made parties to the petition. We do not, from the testimony as abstracted, understand it to be a fact that said five notes were, when petition was filed, held by assignees. The evidence does show they were assigned after the day of their date, and prior to the third day of October, 1876,—the time the Goold, Thayer and Benson contract was entered into; but proof they were in the hands of other parties at and just before this latter date, does not establish they were assigned prior to the 14th day of September, 1875, and in the absence of evidence to the contrary, the presumption of fact would be that they continued in the hands of the person to whom they were executed and delivered, and were owned by him when the petition was filed. However this may be, we do not deem it an essential matter, for the testimony shows that Thayer assigned these notes, without any consideration, to one J. D. Bennitt, "without recourse," and then claimed them as his own, and sought to have them returned, and in fact did get two of them back on October 3, 1876, and afterward, during October and November, 1876, obtained the others. They were all back in Thayer's hands, as mortgagee, and he continued to hold them as such

2—119 ILL.

mortgagee during the residue of the time the petition was pending, and still held them at the date of the decree for the amounts due on them, which was rendered in the suit for specific performance. So we must hold with reference to these five notes as we hold in regard to the matter of omitting Goodspeed, the trustee, as a defendant,—that the defence should have been availed of by those through whom the appellee, Mary S. Buchanan, claims, in the proceeding for the lien.

*Fourth*—The lots in controversy were sold on the 13th day of January, 1883, under the decree for a mechanic's lien, and were purchased by H. H. C. Miller, to whom a certificate of purchase was executed, and which he subsequently assigned to Charles Goodspeed. The property was not redeemed by the appellees, the owners of the equity of redemption, within the twelve months allowed by law. H. Leroy Thayer had, at the September term, 1877, of the Will county circuit court, recovered a judgment, by default, against the Coalfield Coal Company, for $5963.21, damages, and costs, and on January 15, 1884, he assigned this judgment to Fred Bennitt, one of the appellants, who, as such assignee, on the same day, sued out an execution on the judgment, directed to the sheriff of Grundy county. Bennitt thereupon redeemed from the master's sale, and the sheriff executed and delivered to him, as a judgment creditor of the Coalfield Coal Company, a certificate of redemption, and caused said real estate to be advertised for sale under said execution. Appellees then exhibited the present bill, alleging they are the owners of the real estate in controversy, the said Mary S. Buchanan holding the legal title, and the Wilmington Star Mining Company holding the equitable title, and being in actual possession and occupancy of the premises under agreement of purchase, and alleging the invalidity of the lien obtained in the decree of December 20, 1881, on the ground already considered by us; and further alleging, that Bennitt is not the owner of the Will county

judgment in good faith and for value, and that said judgment is in part fraudulent, (setting forth the matters of alleged fraud,) and as to the matter not fraudulent had been paid in full. The bill prayed for an injunction and for a removal of the cloud from their title, and that the levy made by virtue of the execution from the Will circuit court be set aside and annulled. On the hearing, all the material allegations of the bill were found to be true, and a decree was entered substantially as prayed for, and making the injunction perpetual.

It is insisted by appellants, that if the decree in the mechanic's lien case concludes the appellees, then the question of the validity or invalidity of the judgment under which Bennitt seeks to make redemption, can not be raised by them, and that it is wholly immaterial whether the Will county judgment was fraudulent or not. If we properly apprehend the point made, it is,- that if the decree is of binding effect as to appellees, then, as the twelve months allowed them by statute in which to redeem have expired, the bill can not be maintained by them for want of interest in the subject matter of the suit. Of course, appellees must have an interest in the subject matter, in order to give them a standing in court; but we do not understand the authorities cited by appellants to go to the extent of holding that in the case suggested, appellees would have no such interest. *Meyer* v. *Mintonye*, 106 Ill. 414, is an authority to the contrary. There, land had been sold under a decree of foreclosure, and the twelve months in which the owner might redeem had passed and no redemption had been made, and thereupon a void execution was issued on a judgment at law against the owner, and the purchaser at the master's sale accepted the redemption money tendered, and the premises were re-sold on the void execution, and it was held that the acceptance of the money necessary to redeem from one having no right to redeem, after the expiration of the twelve months given the owner for redemption, had the effect simply to extinguish all rights

under the first purchase, and relieve the land of the incumbrance of the mortgage. It would seem a similar result would follow in this case, if the process upon which the redemption was made was issued upon a void judgment.

*Fifth*—The appellant, Bennitt, is not an assignee of the Will county judgment in good faith and for value. His own testimony shows that he paid nothing for the assignment, and is under no obligation to pay anything,—that it was made at the suggestion of Thayer, who told him that any title that he, Thayer, might acquire, would inure to Mrs. Buchanan, and that a court of equity would not permit him to hold such title. We are satisfied from the evidence, as a whole, that Bennitt is but a mere volunteer or nominal party, and has no real interest in the judgment.

*Sixth*—We think it would subserve no useful purpose to discuss the very voluminous facts and circumstances upon which the charge of fraud in the obtension of the judgment in the Will circuit court is predicated. Suffice it to say, that in the present case, the court below found that that judgment "is now, and at the time of the rendition of the same was, fraudulent, and without any consideration whatever, as to the greater part of the damages awarded and reserved therein, and as to such part of said damages judgment ought not to have been recovered, and that as to the remainder of said damages the same had been paid in full at and prior to the date of the assignment of said judgment," and that with this finding we are content. The judgment was a fraud to the extent of $3000, and the residue included in it was also embraced in the amount assumed by Benson in his own contract, and was afterward included in the decree rendered in the suit with the Wilmington Star Mining Company, and which was paid by the appellee, Mary S. Buchanan. It would be inequitable and unjust to permit Thayer, the real party in interest, to have from her a second satisfaction of the amount so paid. Besides, in his deed to her, Thayer expressly cove-

nanted that he had not done or suffered to be done anything whereby the lands in question were, or might be in any manner, incumbered or charged, and that he would warrant and ever defend the premises against all persons lawfully claiming or to claim the same through or under him. These covenants should estop him, in equity, from making his judgment out of this property.

*Seventh*—But the appellant, Fred Bennitt, after the time within which appellees could redeem these lots from the master's sale had expired, did redeem them, and the redemption money was accepted by the holder of the certificate of purchase, and such redemption has freed the real estate of appellees from a binding and subsisting lien. It is a maxim of the courts of chancery, that those who seek equity must do equity. As appellees have voluntarily sought the assistance of the equity court, they should be compelled to observe the requirements of the maxim we have cited.

The decree of the circuit court is reversed, and the cause remanded, with these directions: That if appellees shall be so advised, they have leave to amend their bill by tendering to appellant, Bennitt, the sum of money paid by him for redemption, with six per cent interest thereon from January 16, 1884, and that they be required to pay the same into court, and that upon their so doing a final decree be entered herein in accordance with the prayer of the bill, and making the injunction perpetual; but that in the event appellees should decline and refuse so to do, then their bill of complaint shall be dismissed, at their own proper cost.