H. C. LAMPP, 1368; J. W. FINNEY, 1369, ELEANDER PYLE, 1379, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 10, 1929.*

*Rehearing denied December 18, 1929.*

ULYS PYLE AND CHARLES T. RANDOLPH, for claimants.

OSCAR E. CARLSTROM, Attorney General; ROY D. JOHNSON, Assistant Attorney General, for respondent.

Mr. JUSTICE THOMAS delivered the opinion of the court:

By stipulation of the parties these three cases have been consolidated, and this opinion will apply to all of them.

The claims are all for damages alleged to have been caused to the lands of claimants by the construction of State Bond Issue Route No. 14. Route 14 extends east and west on the section line between Sections 13 and 24 in Township 5 South, Range 8 East of the Third Principal Meridian in White County. Claimant Lampp's land lies immediately south of and adjoining the road, being the Northwest Fourth of the Northeast Quarter of Section 24. Claimant Finney's land also adjoins the road on the south, being the Northwest Fourth of the Northwest Quarter of Section 24. Claimant Pyle's land is the Northeast Fourth of the Northeast Quarter and the Northeast Fourth of the Northwest Quarter of Section 24 and the Southeast Quarter and the East Half of the Southwest Quarter of Section 13, except that part of the East Half of the Southeast Quarter lying on the north side of the Louisville and Nashville railroad. The two forty acre tracts in Section 24 adjoin the hard road on the south and three forty acre tracts in Section 13 adjoin it on the north. The lands of all three claimants are in Seven Mile creek bottoms. Route 14 extends across this bottom for about two miles. All the lands in this territory are very flat and subject to overflow in times of heavy rainfall. Their only outlet for drainage is Seven Mile creek, which flows in a northeasterly direction and empties into the Skillet Fork of the Little Wabash river about five miles north of Route 14. Seven Mile creek is formed by two branches, called in this record the East Branch and West Branch. They unite in Section 13 some distance north of the hard road to form the main channel. These branches and the main channel of the creek are all shallow, very crooked and obstructed with logs, brush and drifts. This condition greatly retards the flow of the water and lessens the carrying capacity of the streams. Before Route 14 was improved by the State the streams would not carry the water in times of heavy rains and these bottom lands were at such times overflowed. Less than one half mile north of Route 14 and parallel with it the Louisville and Nashville railroad extends across the Seven Mile bottoms upon a grade which is considerable higher than the general level of the lands.

Route 14 was a public highway for many years before it was paved by the State, but was not graded up above the level of the adjacent lands to any considerable extent. When

the State took it over for improvement as one of the bond issue routes it built a grade some two miles long and about 5 feet high through this bottom. In this grade four openings were made where streams crossed the road, one being 120 feet long, one 80 feet long, one 40 feet long and one 12 feet long, all of them being 6 feet high or more above the bed of the streams.

The declarations of claimants are all substantially the same. Claimants Lampp and Finney charge the openings in the grade are not sufficient to permit the water to get away and that the grade catches the water and throws and holds it back on their lands and causes them to overflow, thereby rendering them unfit for cultivation and causing loss of crops. Lampp also charges that his dwelling house, barn and other buildings have been greatly damaged and rendered unfit for habitation etc. Claimant Pyle makes the same charges relative to his lands south of the road and, in addition, charges that on the north side of the road barrow pits were so constructed as to change the flow of the water of Seven Mile creek and bring it down across and onto his lands, thereby making his dwelling unfit for habitation, destroying his crops, etc., so that his farm has become worthless. Lampp asks $4,862.00 damages, Finney, $1,950.00 and Pyle $15,000.00. Lampp and Finney each have 40 acres of land and Pyle 306 acres, all claiming their lands have been rendered wholly worthless by the construction of the road in the manner in which it was constructed.

The right of way of Route 14 crosses lands of all the claimants. Pyle and Finney executed deeds conveying the necessary right of way over their lands to the State but Lampp refused to do so and the right of way across his land was taken under the provisions of the Eminent Domain Act, and he was awarded $50.00 damages. His claim in this court is for damages to land not taken for right of way purposes and which he alleges were caused by the construction of the road. We do not know whether or not, in the condemnation proceeding, he asked damages other than for the land actually required for the right of way. He had the right to have the question of damages to his other lands heard and determined in that proceeding; he not only had the right to do that but, if he claimed any such damage, it was his duty to make such claim in that suit. If he did make

such claim the award of $50.00 is, of course, final and binding and the matter cannot be again litigated in this or any other court. The Eminent Domain Act provides that when private property is taken or *damaged* for public use the compensation for such taking or *damage* shall be ascertained by a jury. The act contemplates that the entire compensation to be paid the owner, whether it be for land taken or land damaged or both, shall be ascertained by one jury and in one proceeding. It does not purpose that such compensation shall be assessed piecemeal, a part by a jury in condemnation proceedings and a part recovered in a separate action by the property owner who was the defendant in the condemnation case against the petitioner in that case. In *Springer* v. *Darlington,* 198 Ill. 121, at page 124, the Supreme Court announced the rule in such cases in the following words: "The doctrine of *res adjudicata* is not limited to those things which are actually pleaded and litigated, but it extends to every other matter properly involved in the litigation which might have been raised and determined in it." See also *Bennett* v. *Star Mining Co.,* 119 Ill. 9. Having had his day in court where every question raised in this case either was or might have been litigated claimant is barred by the judgment in that proceeding from asking for any award in this.

Claimants Pyle and Finney executed deeds conveying to the State the right of way required for the road in 1923. Where a person conveys a right of way over his land it will be conclusively presumed that all the damages to the balance of the land, past, present and future, were included in the consideration paid him for his conveyance the same as an assessment of damages on a condemnation would be presumed to embrace. The conveyance of the right of way to the State by Pyle and Finney had the same effect upon the parties to the deeds that a condemnation for the same lands would have had. If the right of way conveyed by them had been acquired by condemnation not only would the compensation for such right of way have been determined in that proceeding by the damages to their other lands caused by the construction of the road would also have been assessed. It follows that had the State condemned this right of way no recovery could be had by these claimants for the damages here sued for. They would have been included in the assessment of damages made on the condemnation, and whether in

fact included or not, they would be conclusively presumed to have been included. The same result follows from the voluntary conveyance by them of the right of way to the State. *Chicago, Rock Island and Pacific Railway Co.* v. *Smith*, 111 Ill. 363. The conveyance of the lands for the barrow pits was for the purpose of removing dirt therefrom to make the fill or grade of the highway, and specifically recited that the grantor waived all damages of every name and nature that might accrue to him because of the pits or of any excavation or removal of material therefrom. Having waived all damages that he might suffer by the excavation of the barrow pits he cannot now maintain an action for them. The fact that contract was made with the State does not make it any the less binding upon him nor relieve him from its enforcement.

Claimants say that in equity and good conscience they should be reimbursed by the State for their losses caused by the construction of the road. The road in question is one of the public highways of the State. It could not be improved and made safe for continuous travel without being graded. Its improvement required additional right of way for the road proper and also the so called barrow pits from which material might be obtained to make the necessary grade. This right of way could only be had in one of two ways,—by condemnation or by the voluntary conveyance by the owners of the land. Lampp allowed his to be condemned, and his compensation was fixed in the manner provided by law in such cases. This court has no jurisdiction to review that proceeding,—it has no appellate jurisdiction—and the judgment in the condemnation suit is *res adjudicata* of the question. Pyle and Finney conveyed the right of way to the State voluntarily. They did not have to do so, but having done so they are held to the legal effect of the conveyance. It follows that neither of claimants has any legal cause of action against the State.

Before claimants can have an award against the State they must show their claim falls within the provisions of some law making the State liable to pay them. If they cannot point to such law they cannot invoke the principle of equity to secure an award. Where there is no legal liability equity cannot create one. (*10 R. C. L.*, sec. 132, p. 383.)

Equity is not the court's sense of moral right; it is not the power of the court to decide a case according to a high standard of abstract right, regardless of the law; it is a complex system of established law. Clearly claimants have shown no equitable cause of action against the State. It was not the intention of the Legislature to clothe this court with the power to make awards unless the facts show such awards are based on either legal or equitable demands. It follows, therefore, that the claims cannot be allowed as a matter of equity.

Claimants cite *Peterson et al.* v. *State,* 5 Ct. Cl. 409, as authority for the allowance of their claims. In that case this court did not pass upon the claims involved. The Attorney General and counsel representing the claimants entered into a stipulation that certain specified sums should be allowed the claimants and all this court did was to recommend that the claimants be allowed the amounts so stipulated, leaving the Legislature to decide whether or not they should be paid, and is not an authority upon any question.

The claims are therefore denied and the cases dismissed.

On December 18, 1929, upon petition for rehearing the following additional opinion was filed:

Claimants filed their petition for a rehearing in the above cases on the 5th day of October, 1929. The court, after a careful consideration of this petition, finds that all questions raised in it were carefully considered and passed on in the original opinion in these cases.

The petition for rehearing, is therefore denied.