TOMPKINS v. TOMPKINS.

1. TRIAL—ABSENCE OF COUNSEL.—On call of a cause on docket, the presiding judge refused to confirm a report on sales, set aside the sale, and ordered a resale and distribution in accordance with the terms of the prior decree for sale. *Held,* that there was no error in so ordering without notice to the party who had given notice of his opposition to the approval of the sale.[1]

2. ADMINISTRATIVE ORDERS—RECORD.—A party at whose instance a sale was set aside, and a resale directed by order passed in open court, cannot ob-

---

[1] See Nobles *v.* Hogg, (6), 36 S. C., 329.

44—39

ject because that others in interest were not represented, or the necessity for a sale shown, especially where the "Case" fails to disclose any facts which would support these objections.

3. JUDICIAL SALE—TIME OF SALE—RESALE.—The rule that charges a purchaser at a judicial sale with the duty of ascertaining that the court which orders the sale has jurisdiction, imposes upon the purchaser the duty of seeing that the officer sells under the authority of such order. Where a master, being authorized to sell only on a day named, advertised for sale on such day, and then withdrew the land from sale and readvertised and sold on a subsequent salesday, without order of the court or consent of all parties in interest, there was no error in setting the sale aside and directing a resale.[1]

4. IBID.—PURCHASER—SUBROGATION.—But the money paid at such unauthorized sale having been in large part appropriated to the payment of charges resting on such land, the purchaser should be protected at the resale. And this court ordered that such resale should not be had unless a greater bid was made, and if sold, that the first purchaser should be repaid what he had paid in, and that his deed, bond, and mortgage be cancelled.

Before IZLAR, J., Edgefield, March, 1892.

The appeal in this case was from the following decretal order:

This is a motion, upon due notice by the defendants, to set aside a sale of certain real estate made by the master, under an order passed in the same cause on the 11th day of March, 1891, upon the following grounds: 1. That the order obtained at the March term, 1891, was passed without notice to the plaintiffs or defendants, or any of them. 2. That all the parties interested in said land were not parties to this suit in March, 1891, and are not now parties herein. 3. That the order passed at March term, 1891, was in all respects regular and properly passed. It authorized the master to sell only "on salesday in November, 1891," and on no other day, or at any other time, and the sale reported as having been made on the 3d day of January, 1892, was a surprise to, and a fraud upon, the parties in interest, without authority, and void. The motion was heard by me at the March, 1892, term of the Court of Common Pleas for said county.

The facts necessary to a full understanding of this question raised and to be determined are briefly as follows: * * *

---

[1] See note j in 21 L. R. A., p. 44.

In the view I take of the case presented, I do not think it necessary to discuss fully the first and second grounds set forth in the motion papers. It may be proper to say, however, that I do not think these grounds can avail the moving parties. The order of the 11th day of March, 1891, was made in open court; and ordinarily all parties interested would be charged with notice thereof, and if certain necessary parties were not before the court at that time, their rights are not affected thereby. The third ground, however, presents a serious question. It is clearly competent for the court, in the absence of any statutory regulation, to prescribe the mode and terms of sale, fix the time of sale, and these requirements must be conformed to by the master or other persons conducting the sale; the conduct of the person conducting the sale is subject to the scrutiny of the court. Confirmation is the judicial sanction of the court, and in all cases of this nature, the court being the vendor, it may in its discretion give or withhold its consent. Any mistake or misunderstanding between persons conducting the sale and intended bidders, or parties in interest, any accident, fraud, or other circumstances by which interests are prejudiced, without fault of the injured party or parties, or by reason whereof property is sold at an under price considerably disproportioned to the real value, will be deemed sufficient cause for refusing confirmation and for ordering a resale, and so generally whatsoever, and even less, that is sufficient to set a sale aside after its confirmation, will, of course, upon the same principle, if known, cause a confirmation to be denied. Rorer on Judicial Sales, sec. 129.

The powers of the master are precisely what the decretal order of the court confers. *Young* v. *Teague,* Bail. Eq., 22. The terms of the decretal order become the law of the case, the condition on which the authority is to be exercised. *Baily* v. *Baily,* 9 Rich. Eq., 395. If the official fails to comply with the terms of the order in making the sale, such sale is without authority, and, therefore, void. *Baily* v. *Baily, supra; Ex parte Alexander,* 35 S. C., 409. Now, in *Baily* v. *Baily, supra,* it is held that where a commissioner sells land without having advertised the sale for the time prescribed in the order of sale,

the sale is invalid, and will be set aside.   At this time there is no statute regulating the time for the advertisement of sales made under the order of the court.   Therefore, the rule may be different now as to the length of time lands shall be adver-tised before sales, by reason that we have no statutes regulating the time when, or the month in which, sales of land ordered by the court shall be made.

Such being the case, I take it that the court may fix the time in the decretal order of sale; and when this is done, it becomes one of the conditions on which the authority of the master, or the person making the sale, is to be exercised; and if such officer fails to comply in this respect with the terms of the order in making the sale, such sale is without authority, and, therefore, void.   It often becomes a serious question at what time a sale of land should be made; and frequently the court is called upon to exercise a sound judicial discretion in fixing the time of sale so as to prevent a sacrifice of the property and an impairment of the rights and interest of the parties.   If the time fixed by the decretal order for sale can be disregarded by the master, then the object which the court had in view may be wholly defeated.   To allow the master to modify the terms of the decretal order of sale in this particular at his discretion, would be dangerous to the rights and interests of the parties interested in such sales.   If the master can, in his discretion, when the time of sale is fixed to take place on salesday in a certain month, disregard this specific condition, and sell upon some subsequent salesday thereafter, what is then to prevent him selling on some salesday previous to that named in the order?

In my opinion, the master has no such discretion.   If the decretal order specifies that the sale is to be made on a certain salesday, this becomes one of the conditions on which the au-thority of the master is to be exercised, and if he fails to sell on that day, his authority is at an end, and his power to make the sale is gone; he must await the further order and discretion of the court.   If, in the exercise of his discretion, he proceeds to sell upon some salesday previous or subsequent to that named in the order, such sale will be invalid for want of au-thority to make it.   Here the decretal order fixed the time for

the sale on the salesday in November, 1891. No authority is given the master to sell at any other time. Without any further order or direction from the court, he sold on the salesday in January, 1892. This was certainly a surprise to the parties here complaining, even if bound by and charged with notice of the order of March 11th, 1891.

Immediately upon receiving information that the sale had been made, the master was notified not to consummate the sale, as its confirmation would be resisted. Notwithstanding this notice, the master, after having led the parties to believe that he would not complete the sale, but would report the facts and circumstances to the court and ask its direction, proceeded to complete the sale by receiving the cash portion of the purchase money, taking the bond and mortgage of the purchaser for the credit portion, and executing and delivering titles to the purchaser. This conduct on the part of the master, under the circumstances, is, to say the least, not commendable; he should have submitted the matter for the judgment of the court. I am not prepared to say that the premises would not have brought a larger price than the bid by W. R. Parks; I am rather inclined, however, to think that they would, as doubtless there would have been more and greater competition. This was, in a measure at least, prevented by the master's selling at an unauthorized time.

It is, therefore, ordered, that the motion to confirm the master's report of sales, bearing date the 4th day of March, 1892, be, and the same is hereby, refused ; that the sale of the "homestead tract," made by the master on the salesday in January, 1892, be set aside, and that the master of Edgefield County do resell the said "homestead tract," at Edgefield C. H., at public auction, on the salesday in November next, or some convenient salesday thereafter, after due and legal advertisement, upon the same terms as to cash, credit, and security, as directed in the previous order for sale thereof. Further ordered, that said master do pay out the proceeds arising from such sale as directed in the previous order for sale of the homestead tract, and retain the surplus until further order of the court.

*Mr. S. S. Tompkins,* for himself.

*Messrs. Sheppard Bros.,* contra.

November 4, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. It seems that in 1877 the plaintiffs, J. G. Tompkins and others, exhibited their complaint on the equity side of the Court of Common Pleas for Edgefield County against S. S. Tompkins and J. W. Tompkins, as executors of the last will of James Tompkins, deceased, and J. L. Tompkins and F. A. Tompkins, as defendants, wherein in general terms it may be stated that the object was to withdraw from said executors the further control of the estate of their testator, that their accounts as such executors might be stated, &c. Creditors of the testator were called in. Decree was made and carried on appeal to the Supreme Court. A portion of the real estate of testator was sold under the order of the court, but a tract of over 1,000 acres, known as the "homestead tract," was reserved from sale. The cause remained on the calendar of the Court of Common Pleas for Edgefield County down to the present time. At the March term, 1891, of said court, Judge Hudson passed an order directing the sale by the master of this "homestead tract" of land on the first Monday in November, 1891. No appeal was taken from this order.

The master advertised the sale to take place on first Monday in November, 1891, but at the suggestion of one of the counsel interested in the cause, such master, without any direction from the court, withdrew the land from sale, but readvertised the land for sale on the first Monday of January, 1892, again acting without any authority from the court. He sold the land to W. R. Parks at the price of $3,250, said purchaser complying with his bid by paying one-half of the purchase money in cash, but before deed was executed by the master or a bond and mortgage by the purchaser, notice from S. S. Tompkins was given to such master and the purchaser Parks that he objected to such sale. Nevertheless, after such notice, the master executed a deed to the purchaser, and the purchaser gave his bond, secured by mortgage. Thereafter a motion was

made at the March term, 1892, before his honor, Judge Izlar, to refuse to confirm the sale. This motion was made on numerous affidavits. Judge Izlar made an order setting aside the sale, and directing the master to resell the said premises on the first Monday of November, 1893, in accordance with the terms of Judge Hudson's decretal order of March 7th, 1891, and pay out the proceeds of such sale as directed in Judge Hudson's order.

From this order of Judge Izlar two separate appeals are taken, one on behalf of S. S. Tompkins, and one by W. R. Parks for himself. The grounds of Mr. Tompkins' appeal are: 1. That said order was made without any motion therefor, and without notice to this defendant, or opportunity of arguing the same.[1] 2. That said order was made without having the necessary parties before the court, the legal representatives of appellant's deceased co-defendants, J. W. Tompkins, James L. Tompkins, and F. A. Tompkins, who represent in the aggregate one half interest in said land, they never having been made parties to this suit. 3. That his honor erred in ordering any further sale of testator's land until the proceeds of former sales had been accounted for and applied, and the exact amount of each subsisting claim ascertained, and the parties in interest given the opportunity of settling the same without selling the ashes of their ancestors. 4. That his honor erred in ordering any part of the proceeds of sale to be paid to Messrs. Gary & Evans, their said claim being an individual liability of appellant's co-defendant, J. W. Tompkins, if it was ever a claim against the estate, being barred by the terms of the order of this court calling in the creditors of said estate, as directed by the Supreme Court.

W. R. Parks presented the following grounds of appeal: 1. Because, as matter of law, his honor erred in refusing to confirm the master's report of sale herein. 2. Because his honor erred in setting aside the sale of the "homestead tract," made by the master on salesday in January, 1892. 3. Because, if

[1] This ground was probably intended to be aimed at Judge Hudson's decree. (See grounds of motion as stated in Judge Izlar's decree.) But it is alleged as a ground of appeal from Judge Izlar's decretal order, and this court so considered it.—REPORTER.

his honor did not err in ordering the "homestead tract" to be resold, he erred in refusing to provide for the return by the master to W. R. Parks of the amount paid by him to the master for the purchase money of said tract.

We will first consider and dispose of the appeal of Mr. Tompkins. We cannot see any virtue in his first ground. Judge Izlar was asked at the regular term of court in March, 1892, at Edgefield, by this appellant to protect him against what he conceived was an invasion of his rights by the master, by a disregard of the terms of the decretal order of Judge Hudson, wherein a tract of land known as the "homestead tract" was required to be sold. When Judge Izlar viewed the terms of such order, and compared the terms of sale adopted by the master, he saw there was, what he conceived to be, a fatal variance. To provide a relief to the plaintiff, he tried by his order to place all the parties as they were under the order of Judge Hudson. It would be difficult to conceive what other course the Circuit Judge could have adopted during term time.

The reformation or change in the administrative part of Judge Hudson's decretal order was all that was done by Judge Izlar, independent of setting the sale aside. This act of Judge Izlar forms no part of an order on the merits. We fail to perceive any injury to this appellant. Besides, there is nothing in the case which informs this court that a decree was not made in this cause when all the parties were alive and allowed to speak for themselves. The previous sale of two thousand acres of land furnishes strong evidence of this. The third ground of appeal seems fanciful. There is nothing to show us that all due regard had not been paid to the rights of all the parties to this controversy in the action of the court below. It certainly had remained on the calendar of the court in Edgefield sufficiently long to enable any amount of scrutiny into the claims of creditors. Besides, this court cannot be called upon to assume the existence of errors in the court below. They must be made to appear by the "Case," and here there is a woful silence in every important particular. The fourth ground of appeal is disposed of by the views we have expressed

in disposing of the first ground of appeal.  These four grounds of appeal must be dismissed.

It remains now to consider the complaint of W. R. Parks. 1. Was it error in the Circuit Judge to refuse to confirm the sale made by the master to Parks?  Let us consider this matter seriously, for it involves the decision of a question of practice that is of moment to purchasers at judicial sales.  We should be slow in adopting any views that would create doubt in the minds of would-be purchasers at such sales. It is of the utmost importance that such sales should be regulated by such wholesome rules, the effect of which will cause the property thus exposed to sale to command its full value, by obtaining bidders to agree to purchase at such figures as represent that full value; and technical difficulties, growing out of such a sale, ought not only to be discouraged, but when made, speedily disapproved of.  The court of last resort in this State has repeated the rule to be, that purchasers are only to be concerned with the facts, that the court that orders the sale has jurisdiction, and that all the parties essential to the cause have been made parties.  This rule seems to us to include the idea of an order for sale, and imports that purchasers should be bound to observe the terms of the order for the sale. The courts of this State are interdicted from "opening the bids," as it is called.  But it has been held that where a sale has been made under a decree of the Court of Equity in this State, and there has been a failure by the master to observe the terms of such decree, the court will refuse to confirm such sale.  *Baily* v. *Baily*, 9 Rich. Eq., 392.  Chancellor Dargan, as the organ of the court in that case, said : "But where the court has made an order of sale, of which a notice is to be given by advertisement for a given time, such direction, *as well as the other terms* [italics ours], become the law of the case.  It becomes the condition on which the authority is to be exercised, the non-performance of which will destroy the power."  Again he says : "The decree investing the commissioner with power to sell is held sufficient, *if he conforms to the conditions of his authority.*"

The Circuit Judge elaborates this view in his decretal order

that will accompany the report of this case. We concur in the views expressed by him. We suppose it is scarcely necessary that we should say, in announcing this conclusion, that no reflection is intended to be made upon the worthy gentleman who was master and made this sale. His motives were praiseworthy, but he was guilty of an error. It may be stated, in passing, that great caution should be observed by officers charged with the duty of making sales under decrees of courts. We will not say that they are never justified in failing to sell on the day named in a decree, without the authority of an order of court for that purpose. It is decidedly the safest and best course, however, to obtain such order. But for an officer, who has failed to get such an order, of his own motion to fix a new day for such sale, cannot be sanctioned. It is true, if all parties in interest had consented to this course, and the court had thereafter sanctioned it by the passage of an order, the error would have been cured. This ground of appeal is overruled. And for the same reason the second ground of appeal is dismissed.

The third ground of appeal seems to us to be meritorious. In this case everybody concerned acquiesces in the sale except S. S. Tompkins. The purchaser has paid into court $1,625 of his money, a large part of which has been appropriated to the purposes of the action under the decree of court. Now, if there is one thing over others in our system of jurisprudence that merits the commendation of all, it must be the flexibility of the principles adopted by Courts of Equity, by which they are made to subserve the needs of each particular case. Ought not those principles to be applied here? It seems so to us. Under our law, William R. Parks, by being a successful bidder at the sale provided for by a decree in this cause, has, to a certain extent, become a party to this action. His money has been paid into court and used for the purpose of the action, under an honest mistake, it is true. Only one party to the action seeks any relief against him. The Circuit Judge orders a new sale, without any provision being made for his (Parks) protection. This is error, and must be rectified.

After much reflection, we have concluded that a decretal

order should be made on Circuit, whereby the master should be directed to sell the ''homestead tract'' of land, here in dispute, after twenty-one days public advertisement, for one-half of the purchase money to be paid in cash and the balance on a credit of twelve months, the credit portion to be secured by bond of the purchaser and a mortgage of the lands by the purchaser, but that such sale shall, in the advertisement and in its conduct, provide that no bid will be received of less than $3,250 ; and that if no more than $3,250 is bid at such sale, then the purchase by Parks shall be confirmed ; but if more than $3,250 is bid, that then the sale to Parks shall be annulled, his deed from the master for the premises shall be cancelled and delivered up by him, and that he shall be paid the sum of $1,625 in cash, and have his bond and mortgage cancelled by the master and delivered to him (Parks).

It is the judgment of this court, that the judgment of the Circuit Court be modified as herein required, and that the cause be remanded to the Circuit Court, without any delay of the *remittitur* going down, for the purpose of having the Circuit Court prepare the decree in accordance with the directions of this court.

# NOTES OF CAUSES

## Decided During the Period comprised in This Volume and not Reported in Full.