# James G. Wright v. Louis Bruschke, Ecenia Bruschke, Charles Kriewitz, Guardian, Robert Cameron and Arthur C. Gehr.

1. APPEALS—*What is a Final Decree.*—A decree which is final as to the right of a party to a deed under a master's certificate of sale in a foreclosure proceeding, or as to a claim of priority in the proceeds of a sale ordered by a court of chancery, is a final decree from which an appeal lies, notwithstanding reservations therein for further consideration by the court regarding the distribution of a surplus which might remain after making certain payments provided for in the decree.

2. FREEHOLD—*When Not Involved.*—A freehold is not involved in a proceeding by petition filed by leave of the court in a foreclosure suit asking for relief against the issuance of a master's deed to the holder of the certificate of sale.

3. PRINCIPAL AND AGENT.—*Knowledge of the Agent, When Chargeable to the Principal.*—As a rule a principal is chargeable only with knowledge of that which his agent learns in the course of his agency, not that which he learns in his private business, or as agent for some one other than the principal sought to be charged.

4. MASTER IN CHANCERY—*Chargeable with Loss Occasioned by Erroneous Statement.*—If a master in chancery makes an erroneous statement in a certificate of sale issued by him, he will be chargeable with the loss occasioned thereby, rather than a holder of the certificate, who, in acquiring the same, relies in good faith upon the matters therein stated.

5. MASTER'S CERTIFICATE OF SALE—*Innocent Assignee Protected.*—When a party having an equity in mortgaged premises, instead of objecting to the confirmation of a master's sale allows the same to be confirmed, but takes from the purchaser a contract to pay for the premises a sum which, together with the bid, would make up the total price of the premises (being the value of the equity and the sum of the mortgage debt and costs), such party, knowing that an assignable certificate of sale would be issued reciting the amount of the bid, and that the purchaser, his representatives or assigns, would, unless the premises were redeemed, be entitled to a deed, if, in consequence of the making such certificate a loss has been occasioned, it is the party who should bear the same, rather than an assignee who has acquired the same in full and honest reliance on the contents thereof.

6. MASTER'S SALE—*Contract as to Bids Unlawful.*—A contract to bid a certain sum for mortgaged premises at a master's sale can not be enforced.

7. TRUSTEES—*Purchases Objected to by the Cestui Que Trust—Nature of Relief.*—When a *cestui que trust* objects to a purchase made by his trustee, the trustee can not be called upon to make up the difference between what he paid and the probable value of the premises at the time; the ordinary relief is in ordering a re-sale upon such terms as shall fully secure to the trustee all he has expended.

**Foreclosure Proceedings, etc.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in this court at the October term, 1895. Reversed and remanded with directions. Opinion filed February 11, 1896.

## STATEMENT OF THE CASE.

The facts of this case are as follows: Anna Bruschke died intestate, possessed of lots 29 and 30, in Oak Grove

Addition to Chicago, and leaving two children, Louis and Ecenia, the minor appellees. The property was incumbered by a mortgage to William Troost. Troost commenced a foreclosure suit, and when the decree of sale was entered January 30, 1893, there was supposed to be an equity of about $5,000 in the property. During the time that the foreclosure proceeding was pending efforts were made by the parties interested in the equity, to dispose of the property, and the appellee, Robert Cameron, learned that the property could be purchased at a reasonable price.

During the summer of 1892 Mr. Cameron had negotiations with the administrator of the Anna Bruschke estate, and with the guardian of the Bruschke children, and finally in August, 1892, entered into a contract with them to buy the property for $10,000 when the title should be examined and found good. At the time Cameron made the contract with the administrator and guardian he saw and advised with A. C. Gehr in the matter, and frequently called at his office. It was soon determined that the guardian and administrator could give no title to the property, and that the best way in which a clear title could be obtained was through the pending foreclosure proceeding. Cameron was willing and expected to pay $10,000 for the property. When, however, he could do nothing under his contract with the guardian and administrator, he talked with Gehr, and supposed that Gehr would, at the foreclosure sale, secure the title for him. He did not have $10,000 in cash, but was responsible in property, and Gehr told Cameron that he (Gehr) would furnish the cash for the purchase, provided Cameron would secure him. Gehr had in his employ a young man named Wright, the son of the appellant, James G. Wright. The arrangement between Gehr and Cameron was that Cameron was to mortgage some of his property to secure Gehr for the money he was to advance. On the day of sale Cameron was not present. Gehr told him it was not necessary for him to be present. Instead of buying the property for Cameron, Gehr bought it himself, and in his own name. Gehr had no written authority from Cameron; yet Cameron supposed that Gehr would buy the property for him.

There is some conflict of testimony regarding exactly what took place at the judicial sale under the foreclosure proceedings, it being affirmed and denied that the property was sold to Gehr for $10,000, partly in cash and partly on time. The master reported a cash sale to Gehr for $4,918.43, which was the amount necessary to pay off the Troost mortgage, and Gehr entered into a contract in his own name with the guardian of the minors to pay before the expiration of the period of redemption (fifteen months from the date of the master's sale) such a sum as would make the property cost the sum of $10,000. This contract was unknown to Cameron. Inasmuch as Gehr did not have the money to pay the amount he had agreed to pay in cash at the foreclosure sale, he obtained the money from James G. Wright. He and Wright both claim that there was a sale of the certificate by Gehr to Wright, with the understanding that the property would probably be redeemed. Wright claims to have been ignorant of the facts of Cameron's connection with the matter, or Gehr's contract with the guardian of the minors. He says that he left the matter of the purchase to his son, Wright, Jr., and relied on Wright, Jr., and Gehr in the matter. This transfer of the certificate was made in March, 1893. In the early part of April, 1893, Cameron executed and delivered to Gehr a trust deed on a piece of property he owned on Wellington street to secure his $11,000 note, on which Gehr was to loan him $1,000 in cash, the balance of $10,000 to be held by Gehr as security for the $10,000 he was supposed to have advanced and to be about to advance on the purchase. Cameron did not know at the time he gave the trust deed that Gehr had already assigned the certificate to Wright, but supposed, all the while, that Gehr was keeping it with his and his wife's other papers and abstracts in his vault, and did not learn of the fact until after the expiration of the period of redemption.

In July or August, 1893, Gehr pledged the Cameron trust deed and note with one Bouton, as collateral security for a loan of $5,000 from Bouton to Gehr, and the following

spring he attempted to pledge the equity in the trust deed and note to James G. Wright, as collateral security to a loan of $7,700 from Wright to Gehr. Cameron did not know of these facts until the following July, when he learned them at the same time he learned about the sale of the certificate.

In this whole matter Cameron supposed that Gehr would purchase the property at the foreclosure for him (Cameron). It was understood that Gehr should do so. Gehr bought the property for himself, transferred the certificate, and then took Cameron's securities, which he hypothecated for his own benefit.

When the time arrived for the payment to the minors of the balance due under the $10,000 contract with Gehr, Gehr was unable to comply with the terms of the contract. When the fifteen months allowed for redemption expired, James G. Wright applied to the master for a deed, which the master refused to issue. The guardian of the minors by leave of court filed a petition setting out certain of the facts above set forth, asking for relief against the issuance of a master's deed to Wright, and that the property be re-sold to satisfy the balance due the minors under the $10,000 sale, "at the risk of loss and damage to Gehr or Cameron." Cameron answered, denying that the guardian was entitled to any personal decree as against him, and as to the agreement by him to buy the property at the master's sale, pleaded the statute of frauds. Wright answered, insisting that he is the *bona fide* purchaser of the certificate under the master's sale, and that he has a first lien on the property, as against everybody, for the amount of money he advanced on the certificate.

The decree of the court is in part as follows:

"The court finds that the report of the master in chancery of said sale stated the amount actually bid at said sale, the same being the highest open bid made to said master at said sale; but that, while said Arthur C. Gehr refused to make any higher bid than the one reported by said master, he nevertheless had, prior to said sale, agreed with

the guardian of said minors, Louis Bruschke and Ecenia Bruschke, that he would bid at said sale for said premises the sum of ten thousand dollars ($10,000), and at the time of sale it was represented by said Gehr to said master and to said guardian that he intended to pay the balance of said sum of ten thousand dollars ($10,000) for an absolute, indefeasible title, although he would not at said sale bid more than a sufficient amount to satisfy the said decree of foreclosure; and he, at said sale, agreed with said representative of said minors that he would then pay to the master in cash the full amount necessary to satisfy said decree of sale in full, namely, the sum of $4,918.43, the amount of his said bid, and that he would pay the balance of said ten thousand dollars, viz., the sum of five thousand and eighty-one dollars and fifty-seven cents ($5,081.57), on or before June 2, 1894, the last day of redemption from said sale; and the court further finds that on or about the day of said sale, and after said sale, the said Gehr entered into a written memorandum of agreement substantially to that effect.

" And the court further finds that the said Gehr, on or about the 14th day of March, 1893, assigned and transferred said certificate of sale to the said defendant, James G. Wright, for the sum, as is claimed, of four thousand nine hundred and eighteen dollars and forty-three cents ($4,918.43.)

" The court further found that the said defendant, James G. Wright, by the assignment and transfer of said certificate to him, is chargeable with knowledge of all facts and circumstances attending the sale of said premises, of the issuance to said Gehr of said master's certificate of sale, and of its erroneous statements ; and that he, said Wright, acquired no greater rights and equities in and to said certificates of sale, than had been acquired therein and thereto by said Arthur C. Gehr."

" The court further finds that neither the said James G. Wright, nor any of the other defendants to the intervening petition of said minors, has any right, lien, title, claim or interest whatsoever in and to said premises, or in and to the

proceeds thereof paramount to or as against the right or claim of said minor petitioners, unless they pay or cause to be paid to said minors the amount found due them, and as is hereinafter decreed, and that there is due and payable to Louis Bruschke and Ecenia Bruschke, said minor petitioners, on the deferred payment from the sale of said premises, the sum of five thousand three hundred and ninety-nine and 17-100 dollars ($5,399.17), which is the sum of ten thousand dollars ($10,000), with interest thereon at the rate of five per cent (5 per cent) per annum from the 2d day of March, 1893, the day of said sale, to the 2d day of June, 1894, the day of the expiration of the time of redemption from the sale of said premises, less the said sum paid of four thousand nine hundred and eighteen and 43-100 dollars ($4,918.43), with interest thereon at five per cent (5 per cent) per annum from said 2d day of March, 1893, to said 2d day of June, 1894, together with interest thereon at the rate of five per centum per annum from said 2d day of June, 1894."

The decree proceeds : " It is therefore ordered, adjudged, and decreed that unless the said Robert Cameron, Arthur C. Gehr, and the said James G. Wright, or some one of them, do or shall pay, or cause to be paid within ten days from the day of the entry of this decree, to the said Charles Kriewitz, as guardian of said minor petitioners, the sum of five thousand three hundred and ninety-nine and 17-100 dollars ($5,399.17), together with interest thereon from the 2d day of June, 1894, all and singular the premises described in the bill of complaint be sold at public auction for cash to the highest and best bidder."

The decree proceeds : " The master is directed to receive no bid for said premises of a less amount than five thousand three hundred and ninety-nine dollars and seventeen cents ($5,399.17), with interest at five per cent per annum, from the second day of June, 1894, to the date of sale at five per cent per annum, together with the unpaid costs of this suit, inclusive of master's fees, commissions and disbursements added thereto.

" Out of the proceeds of sale he shall retain his fees, dis-

bursements and commissions, and see that all unpaid costs are paid, and pay to the said guardian, as such, the amount due under this decree, and if there shall be a surplus he shall bring the same into court to abide the further order of the court, and the court reserves all questions as to the distribution of such surplus or the right or interest of any of the parties to this suit thereto, or a lien thereon, whether equitable or otherwise, and directions as to the cancellation of such former certificates of sale, so assigned to said Wright until the coming in of such master's report.

"That a certificate of sale shall be given the purchaser and a deed at the expiration of the period of redemption. That all parties to this cause be foreclosed and barred from further claim to these premises. That purchaser or assigns shall be let into possession upon delivery of deed; and may have writ of assistance."

Lee & Hay, attorneys for appellant; William Brown, of counsel.

Allan C. Story and Fred W. Story, attorneys for appellees, contended that the court below was fully warranted in ordering a re-sale of the property. In chancery, while the court may order a re-sale, it has the power also to compel a compliance by the purchaser with the terms of sale, by a specific performance of his contract, even to issuing a writ of possession. Rorer on Judicial Sales, Sec. 162, 163 *et seq.;* Wood v. Mann, 3 Sumner, 318.

This right was optional, not with the purchaser, but with the court. Wood v. Mann, 3 Sumner, 318; Rorer, p. 70, Sec. 149; Cozet v. Hubbell, 36 N. Y. 677.

The purchaser may be compelled to close up his purchase summarily, by motion, or rule. Graham v. Bleakie, 2 Daly, 55.

The court being a party to such sale, will not be turned over to the circuitous remedy by action, to recover the unpaid purchase money. Clarkson v. Reid, 15 Gratt. 288; Casamajor v. Strode, 1 Sim. & Stuart, 381.

Though the judicial sale of the lands of a minor be irregularly made, yet if it be for the interest of the minor that the sale stand, the court will enforce the same, and complete the title if practicable, the same at equity as well as between individuals on their personal contracts, provided it can be done within a reasonable time. Irregularities will be swept away by the court by such curative decrees or orders as equity shall require. Daniel v. Leitch, 13 Gratt. 195; Gross v. Pearcy, 2 Pat. & H. 483.

Whoever makes himself a party to judicial proceedings in a court of general jurisdiction as a purchaser at judicial sale, and undertakes to do a particular thing under its decretal orders, may be compelled to perform what he undertakes. Rorer, Sec. 148; Gross v. Pearcy, 2 Pat. & H. 483; Planters Bank v. Fowlkes, 4 Sneed, 461; Blackmore v. Barker, 2 Swan. 340; Stimson v. Mead, 2 R. I. 541; Cozet v. Hubbell, 36 N. Y. 677; Hill v. Hill, 58 Ill. 239; Vance's Admr. v. Foster, 9 Bush, 389; Dills v. Jasper, 33 Ill. 273.

And the proper tribunal to compel it, is the same court, and by motion in the same cause, in which the undertaking occurred. Rorer, Sec. 148; Wood v. Mann, 3 Sum. 318–326; Requa v. Rea, 2 Paige, 339; Brasher v. Courtlandt, 2 John. Ch. 505; Cozet v. Hubbell, *supra*, 36 N. Y. 677; Casamajor v. Strode, 1 Sim. & St. 381; Lansdowne v. Edgerton, 14 Ves. 512.

And lapse of time, many years, is no bar to the motion where purchaser is in possession and retains a portion of the purchase money. Cozet v. Hubbell, 36 N. Y. 677.

In case a re-sale is ordered the purchaser is entitled to have a day fixed in decree of re-sale by which he may discharge the purchase money, and thus redeem from the decree of re-sale. Gross v. Pearcy, 2 Pat. & H. (Va.) 483, 489. See also Stevens v. Magruder, 31 Md. 168; Barnes v. Morris, 4 Ired. Eq. 22; Singleton v. Whitaker, Phil. Eq., N. C., 77.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

It is insisted that an appeal in this case was prematurely

taken, the court having reserved for further consideration the distribution of any surplus which might remain after paying to the minors the sum of $5,399.17, with interest, and also paying fees, costs, etc.

The decree is final as to the right of appellant to a deed under his certificate of sale, and is also final as to the priority of appellant's claim to the proceeds of the sale ordered.

No freehold is involved in this controversy. The appeal was therefore neither premature nor improperly taken to this court.

Appellant is not found to have been a party to any fraudulent practice by Gehr, or to the contract by him made, or to the engagement of Cameron.

Nor does it appear that appellant had knowledge or notice of either such fraudulent practices by Gehr or of any contract made by him or Cameron. It is urged that appellant is chargeable with notice of what Gehr and appellant's son knew in respect to the issuing of the certificate of sale and the contracts for sale of the real property; it being said that they were appellant's agents to purchase for him this certificate.

It appears that Gehr sold to appellant the certificate of sale. Gehr was in no wise appellant's agent in respect to this matter. Appellant's son appears to have asked Gehr if he would not sell the certificate to appellant. It does not appear that appellant's son, in any negotiation for, or business concerning, the sale of this certificate to appellant, learned anything concerning the fraudulent practices of Gehr, or concerning either of the contracts made respectively by him and Cameron.

A principal is not chargeable with notice of all that his agent may have learned from his youth up. As a rule, a principal is chargeable only with knowledge of that which his agent learned in the course of his agency, not with what he learned in his private business, or as agent for some one other than the principal sought to be charged. Ewell's Evans on Agency, 231, *164; McCormick v. Wheeler, Mellick & Co., 36 Ill. 114, 121; Herrington v. McCollum, 73 Ill. 476, 482; Campbell et al. v. Benjamin et al., 69 Ill. 244, 250.

Nor is appellant, by the mere purchase of the certificate, as held by the court below, chargeable "with knowledge of all facts and circumstances attending the sale of said premises, of the issuance to said Gehr of said master's certificate of sale, and of its erroneous statements."

There is nothing to show that the master made erroneous statements in the certificate of sale by him issued to Gehr. The court below find "that the report of the master in chancery stated the amount actually bid at said sale, the same being the highest open bid made to said master at said sale." If the master made erroneous statements in the certificate of sale by him issued, he would be chargeable with loss occasioned thereby, rather than a holder of the certificate who had, in good faith, relied upon the matters and things stated therein.

The guardian of the minors, instead of objecting to a confirmation of the master's sale to Gehr, allowed the same to be confirmed and a certificate issued; thereafter taking from Gehr a contract to pay for the premises sold a sum which, together with his bid, would make the total sum of $10,000. The guardian knew that a certificate of sale would be issued to Gehr, reciting the amount of his bid, $4,918.43, and that the said Gehr, his representatives or assigns, would, unless the premises were redeemed according to law, "be entitled to a deed thereof at the expiration of fifteen months from the sale;" and the guardian also knew that such certificate was by the statute made assignable.

If, therefore, in consequence of the making of such certificate of sale, a loss has been occasioned, it is the guardian who should bear the same, rather than one who acquired the certificate in full and honest reliance on the contents thereof.

The appellee, Cameron, is not bound by the arrangement that at the master's sale he would bid the property off at the sum of $10,000. While the agreement in this regard, doubtless, was in perfect good faith, it was one which the law does not permit to be made. A contract that the mas-

ter should sell to Cameron for $10,000 would not have been valid, and for want of mutuality his promise to bid $10,000 can not be enforced.

Appellant, in good faith, paid $4,918.43 for the master's certificate of sale; all of this money was properly applied in satisfaction of the mortgage on said premises, which was a lien superior to the claim of the minors. The minors and their guardian, as such, have had the benefit of the money paid by appellant. By the decree of the court below the claim of the minors to what may be realized upon a re-sale of the premises, is made superior to that of appellant for the money by him paid, without the payment of which money the minors' claim to this property would be subject to a fore-closure decree for nearly $5,000.

Appellant purchased the certificate of sale, relying not only upon the record of the court, but the records of the recorder's office, in which such certificates are required to be recorded; and no change can be made in the certificate without a saving of appellant's rights. Jackson et al. v. Spink, 59 Ill. 404–409; Church v. English, 81 Ill. 442; Gillett v. Booth, 95 Ill. 183–187.

We do not mean to indicate that a master's certificate of sale is assignable so as to vest in the assignee title superior to that of his assignor. This is a court of equity, and those who appeal to it must do equity.

Even if the appellant were chargeable with notice of all that anybody connected with the transaction knew of all that is charged to have been wrongly done, yet in depriving him of his legal rights, a court of equity, the province of which is to do equity, not to inflict penalties for misconduct, will refuse to allow him the benefit of his certificate, only upon terms that whatever expense he has incurred therefor, which went to the benefit of the equitable owners, must be paid to him. Lord Hardwicke v. Vernon, 4 Ves. 411; Randall v. Errington, 10 Ves. 423; Hamilton v. Wright, 9 C. & F. 123; Atty. Gen'l v. Lord Dudley, Coop. 146; Pearson v. Benson, 28 Beav. 598; Ex parte Reynolds, 5 Ves. 707.

When a *cestui que trust* objects to a purchase by a trustee, the trustee is not to be called to make up the difference between what he paid and what was the true or probable value at the time; the ordinary relief consists in ordering a re-sale upon such terms as shall fully secure to the trustee all that he has expended. Mason v. Marten, 4 Maryland 124; Hawley v. Cramer, 4 Cowen 719; Imboden v. Hunter, 23 Ark. 622; Davoue v. Fanning, 2 Johnson's Ch. 252, 271; Scott et al. v. Freeman, 1 Sanford 148, 152; see, also, Bennett v. Star Mining Co., 119 Ill. 9.

Appellant does not now ask to have a deed issued to him upon his certificate; he has expressed his willingness to have the same canceled, upon the payment to him of the amount paid by him therefor, and interest from the date of his payment.

Appellant's claim for this has precedence over all others. Unless such amount be paid to appellant within a short time to be fixed, the premises should be sold by the master for cash, without redemption.

The decree of the Circuit Court is reversed and the cause remanded, with directions that unless the appellant be paid as before stated, that a decree be entered, directing a sale of the premises by the master, for cash without redemption, and out of the proceeds to pay, first, the expenses of the sale; second, the amount that the appellant should receive as before stated, and the residue to the guardian of said minors; and that at such sale the master receive no bid for an amount less than the sum to be paid appellant, together with the costs of such sale, including the master's fees and commissions; and that if no bid equal to such amount shall be made, then George Mills Rogers, the master who gave the said certificate of sale to said Gehr, shall execute to the holder of said certificate of sale, a master's deed in pursuance of the sale heretofore made, and the petition of the minors by their guardian, be dismissed. Reversed and remanded with directions.