[S. F. No. 5572.   Department One.—November 7, 1911.]

HUMBOLDT SAVINGS BANK, substituted for Winfield S. Keyes et al., Appellant, v. MARY C. McCLEVERTY, Respondent.

DEED OF TRUST — AGREEMENT FOR SALE OF LAND AS A WHOLE.—The parties to a mortgage or a deed of trust may contract that the premises shall be sold as a whole, and their agreement to this end is enforceable.

ID.—DISCRETION TO SELL AS WHOLE OR IN PARCELS—DISCRETION TO BE EXERCISED IN GOOD FAITH.—A provision in a deed of trust that the trustees may sell the land as a whole, "or in their discretion, in such reasonable parcels or subdivisions as they, in their judgment, may deem advisable," is not an absolute stipulation that the property should be sold as a whole.  It gives them a discretion to sell as a whole or in parcels.  This discretion they are bound to exercise in good faith for the best interests of their beneficiaries, who include not only the creditor, but the debtor and his successors in interest.

ID.—DEED OF TRUST OF DIFFERENT LOTS—SUBSEQUENT DECLARATION OF HOMESTEAD ON ONE LOT—HOMESTEAD CLAIMANT IN SITUATION OF SURETY—ORDER IN WHICH LOTS SHOULD BE SOLD.—Where a husband, as security for his indebtedness, executes a deed of trust of two

pieces of community land, on one of which his wife subsequently files a declaration of homestead, the piece so filed on, by virtue of its homestead character, passed upon his death to the surviving wife, who thereafter stood, with respect to the enforcement of the creditors' claim against the property conveyed by the deed of trust, in the situation of a surety, and as such had the right to have the principal debtor's property first sold to pay the debt.

ID.—ABUSE OF TRUSTEES' DISCRETION IN SELLING LOTS AS A WHOLE.— Under such circumstances, where the deed of trust empowered the trustees to sell the property as a whole, or, in their discretion, in such reasonable parcels as they in their judgment might deem advisable, a sale of the two lots as a whole, in disregard of the homestead claimant's demand and right to have the principal debtor's property first applied to the payment of the debt, was an abuse of the discretion reposed in the trustees.

ID.—ACTION BY HOMESTEAD CLAIMANT TO SET ASIDE SALE—OFFER TO PAY ENTIRE DEBT WHEN NOT REQUIRED.—Where the trustees, against the protest of the homestead claimant, sold the two lots as a whole, she is not required, as a condition precedent to her right to have the sale set aside, to offer to pay the entire debt secured by the deed of trust, if it would be inequitable to exact such offer of her. Under the circumstances of this case, where the debt so secured amounted to $57,618.30, and the homestead property was worth only $5,000, while the other lot was worth $57,565, it would be inequitable to require her to pay, or to offer to pay, the entire debt, in order to enable her to attack the unauthorized sale of her homestead.

ID.—PURCHASER WHEN CHARGEABLE WITH PURCHASE OF PART OF PROPERTY AT ITS ASCERTAINED VALUE.—Ordinarily, where a sale by trustees under a deed of trust was improperly made, it should, on the application of the injured party, be set aside *in toto* and a new sale ordered. Where, however, a new sale is impossible, as in the case where a part or all of the property has passed into the ownership of third parties, who have purchased for value and without notice of any infirmity in the sale, the party injured, if free from laches and not otherwise responsible for the condition, is entitled to such equitable remedy against the creditor and trustees as will most fairly redress the injury which they have inflicted, and if relief cannot be given without compelling the creditor to accept the property wrongfully purchased by him at its true value, he may be held to a purchase at such value.

ID.—SETTING ASIDE SALE IN TOTO—PROPER JUDGMENT WHEN PURCHASER HAS NOT CONVEYED ANY PART OF PROPERTY.—In the present case, as neither the pleading nor the findings show that the creditor under the deed of trust, who purchased as a whole the two lots thereby conveyed, had parted with the title to any part of such property, the court erred in holding it as a purchaser of the lot not covered by the homestead at its value as found by the court, and should have ordered a sale of all the property according to the rights of the parties,—

that is, a sale first of the lot not covered by the homestead and, in the event of a deficiency after crediting the debtor with the rents and profits of this piece, a sale of the homestead.

APPEAL from a judgment of the Superior Court of Alameda County.  T. W. Harris, Judge.

The facts are stated in the opinion of the court.

C. E. Hatch, and Alexander D. Keyes, for Appellant.

Fitzgerald & Abbott, for Respondent.

SLOSS, J.—The action was brought to recover possession of a lot of land situated on Harrison Street in the city of Oakland.  This is the second appeal.  Upon the first appeal a judgment in favor of the defendant was reversed and the cause remanded with leave to the defendant to file amended or additional pleadings as she might be advised.  (*Weber* v. *McCleverty,* 149 Cal. 316, [86 Pac. 706].)  During the pendency of the action, Weber, the original plaintiff, died, and Humboldt Savings Bank has been substituted for him.

The land involved, together with another parcel of land situated on Broadway Street in Oakland, had originally been owned by Clarles McCleverty, the husband of the respondent.  In January, 1901, McCleverty made his promissory note for $55,300 to Humboldt Savings Bank, and secured the same by a deed of trust of the two parcels of land.  In May, 1901, the defendant Mary C. McCleverty made and recorded a declaration of homestead on the Harrison Street lot.  In July, 1901, default having been made in the payment of the note, the trustees named in the deed of trust, after notice duly given, sold both parcels and conveyed the same to Adolph C. Weber, the original plaintiff, for $57,177.40, that being the highest sum bid.  In the meanwhile McCleverty had died leaving a will wherein he named his widow, the defendant herein, as executrix, the will had been admitted to probate and letters testamentary issued.  Before the sale took place, the defendant demanded of the Humboldt Savings Bank and of the trustees, that, in any sale to be made under the deed of trust, the property which was not impressed with the homestead character

should be sold first; but compliance with this demand was refused. These facts, together with the further one that the bank had failed to present a claim against the estate of Mc-Cleverty, appeared on the first appeal. The principal question there considered was whether, under section 1475 of the Code of Civil Procedure, the failure to so present a claim barred the creditor of its right to compel a sale of the homestead. Concluding that no such presentation was required as a condition to the enforcement of the rights created by a deed of trust, this court reversed the judgment in favor of the defendant. With reference to the claim that the two properties should not have been sold as a whole, we said that the pleadings were not sufficient to entitle the defendant to defeat the action on this ground, but, as above stated, permission to file amended or further pleadings was accorded to her.

Upon the return of the case to the lower court, she availed herself of such leave by filing an amended answer and a cross-complaint, in which she averred, in addition to what has already been stated, that at the time of the sale, the Broadway property (i. e., that not covered by the homestead) was worth more than $57,177.40, the sum realized at the sale for both parcels; that if said parcel had been sold first, and separately from the homestead, it would have brought a sum in excess of the debt secured, and would have made it unnecessary to sell the homestead. It was alleged, further, that Weber, the purchaser, was the president of the Humboldt Bank, that he purchased the property as agent for the bank, and that before purchasing he had full knowledge of the facts concerning the declaration of homestead, the death of McCleverty, the defendant's demand for a sale in parcels, and the value of the respective parcels. There were also allegations to the effect that the homestead premises had been the community property of McCleverty and his wife, that the latter had remained in possession of the same at all times after her husband's death, and that such title to the said premises as had been acquired by Weber for the bank still remained in the bank.

The court found that the Broadway property was, at the time of the trustees' sale, of the value of $57,565, "and would and could be sold for said sum of $57,565 at public auction if sold separately as demanded by defendant." The amount then due on the note was $57,618.30. If the Broadway prop-

erty had been sold first and separate from the homestead property, it would not have been necessary to sell the latter except for the deficiency of $53.30, the difference between the amount due and the value of the Broadway property. In all other respects, the findings are in favor of the defendant's allegations in her answer and cross-complaint.

From these findings, the court drew the conclusions of law that the trustees' sale and conveyance to Weber, so far as they concern the homestead property, are invalid, and that the deed as to said homestead property be vacated and set aside; that the amount of $57,565, the value of the Broadway property, be applied and considered in payment of the sum of $57,618.30 due to the bank; that the balance of $53.30, with interest, be and is secured by the deed of trust as to the homestead property; that if defendant pay such balance within ten days, then the whole of the debt secured by the deed of trust, shall be deemed paid and satisfied, and a reconveyance shall be made to defendant, and said property shall vest in her absolutely, but in the event of her failure to make such payment, the homestead premises shall be subject to sale under the deed of trust to satisfy said deficiency. A judgment was entered accordingly, and from this judgment the plaintiff appeals.

The facts are not in dispute, none of the findings being attacked. The appellant's position is that the court drew erroneous conclusions from these facts, and entered a judgment which is not supported by them.

1. The first contention is that, under the express terms of the deed of trust, the trustees were authorized to sell the property as a whole, and that the failure to sell in parcels, as demanded, afforded to the defendant no ground for setting the sale aside. The deed of trust contained this provision relative to the powers of the trustees: "They may sell said premises, as above described, as a whole, or in their discretion, in such reasonable parcels or subdivisions as they, in their judgment, may deem advisable." We do not doubt that the parties to a mortgage or a deed of trust may contract that the premises shall be sold as a whole, and that their agreement to this end is enforceable. This court has so held in the case of a mortgage, notwithstanding the provisions of the Code of Civil Procedure (secs. 694 and 726) that upon an execution on foreclosure, several known lots or parcels must be sold separately.

(*Bank of Sonoma* v. *Charles,* 86 Cal. 322, [24 Pac. 1019].)
The right of a debtor to waive a sale by parcels applies equally
to a deed of trust (*Brown* v. *Mortgage Co.,* 86 Miss. 388, [38
So. 312]), and the validity of an agreement for a sale in bulk
follows *a fortiori,* where, as in this state, there is no statutory
provision requiring the trustees to sell in subdivisions. (*Dunn*
v. *McCoy,* 150 Mo. 548, [52 S. W. 21].)

But in the case at bar the parties did not make an absolute
stipulation that the property should be sold as a whole. The
provision above quoted gave the trustees a discretion to sell as
a whole or in parcels. This discretion they were bound to
exercise in good faith for the best interests of their bene-
ficiaries, who included, not only the creditor, but the debtor
and his successors in interest. At the time of the sale, the
Harrison Street property did not belong to the estate of Mc-
Cleverty, the debtor. It had, by virtue of its homestead char-
acter, passed upon McCleverty's death to his widow. (Civ.
Code, sec. 1265; Code Civ. Proc., sec. 1474.) With respect to
the enforcement of the bank's claim against this property, she
stood, therefore, in the situation of a surety, and, as such, had
the right to have the principal debtor's property first sold to
pay the debt. (Civ. Code, sec. 2850; *McLaughlin* v. *Hart,* 46
Cal. 638; *Blood* v. *Munn,* 155 Cal. 228, [100 Pac. 694].) In
view of the relations of the parties to the different parcels
covered by the deed of trust, a sale as a whole, in disregard of
the homestead claimant's demand and right to have the princi-
pal debtor's property first applied to the payment of the debt,
was a manifest abuse of the discretion reposed in the trustees.
This consideration alone, without regard to the fact, admitted
by plaintiff at the trial, that the property would have realized
a larger sum if the parcels had been sold separately, entitled
the defendant to disaffirm the sale.

2. It is urged that the defendant was bound, as a condition
precedent to her right to have the sale set aside, to offer to pay
the entire debt secured by the deed of trust. It has often been
held that an action to set aside a sale by trustees or on fore-
closure for irregularities of any kind should ordinarily be
accompanied by an offer to redeem by paying the sum due.
(*Savings & Loan Soc.* v. *Burnett,* 106 Cal. 514, 538, [39 Pac.
922]; *Sacramento Bank* v. *Copsey,* 133 Cal. 659, [85 Am. St.
Rep. 238, 66 Pac. 7, 204].) The plaintiff is held to compliance

with the old maxim that he who seeks equity must do equity. (*Marvel* v. *Cobb,* 200 Mass. 293; [86 N. E. 360]; *Phoenix Ins. Co.* v. *Rink,* 110 Ill. 538; *Garland* v. *Watson,* 74 Ala. 323; *Sloan* v. *Coolbaugh,* 10 Iowa 31.) On the other hand, there are not a few cases holding that where a party has the right to avoid a sale, he is not bound to tender any payment in redemption. (*Brewer* v. *Harrison,* 27 Colo. 349, [62 Pac. 224]; *Lewis* v. *Hamilton,* 26 Colo. 263, [59 Pac. 196]; *Meyer* v. *Jefferson Ins. Co.,* 5 Mo. App. 245; *Briggs* v. *Hall,* 16 R. I. 577, [18 Atl. 177].) Whatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale. (*Benedict* v. *Gammon Theological Seminary,* 122 Ga. 412, [50 S. E. 162].) Under the circumstances disclosed by this record, the defendant would be subjected to very evident injustice and hardship if her right to attack the sale were made dependent upon an offer by her to pay the whole debt. The debt was not hers, and she was not liable for any part of it. Her only interest was in the homestead property, which, with other land, was held as security for McCleverty's note. The property which she was seeking to save from the effect of the sale was worth, according to the finding of the court, $5,000, while the property in which she had no interest was worth over $57,000. The debt amounted to $57,618.30. It must be apparent, from a mere statement of these facts, that there is no equity in the claim that, in order to be enabled to attack an unauthorized sale of her five-thousand-dollar homestead, she must pay, or offer to pay, a debt of $57,000, for which she is in no way liable.

3. The decree set aside the sale, not as an entirety, but only so far as it affected the homestead property. The Broadway parcel was treated by the court as if it had actually been sold, separately, for the sum which the court found to be its actual value at the time of the sale. To this mode of disposing of the controversy, the appellant makes two objections, which, while they are argued under distinct heads, may well, we think, be treated together. It is contended: 1. That by compelling the plaintiff to take the Broadway property at what is found to be its actual value, the court is imposing upon the purchaser at the sale a bargain to which he, or his principal, never assented; and, 2. That the sale of both parcels having con-

stituted a single transaction, the defendant is not entitled to ratify a part of the sale, while disaffirming the rest, but must, by reason of her ratification of the sale of the Broadway piece, be held to have confirmed the entire transaction.

Ordinarily, where it appears that a sale was improperly made, it should, on the application of the injured party, be set aside and a new sale ordered. (*Wright* v. *Bruschke,* 62 Ill. App. 358; *Davoue* v. *Fanning,* 2 Johns. Ch. (N. Y.) 252; *Mason* v. *Martin,* 4 Md. 124; *Imboden* v. *Hunter,* 23 Ark. 622, [79 Am. Dec. 116]; *Tompkins* v. *Tompkins,* 39 S. C. 537, [18 S. E. 233]; *Duncan* v. *Home Co-op. Co.,* 221 Mo. 315, [120 S. W. 733].) This is the normal and proper remedy for the wrong inflicted. The creditor is entitled to have the property sold. The attempted sale has been conducted in an unauthorized manner. The rights of all parties are protected by setting aside the action taken, and directing a new sale which shall be in accordance with the law and the agreement of the parties. But there may be cases in which a new sale is impossible. A part or all of the property may, for example, have passed into the ownership of third parties, who have purchased for value and without notice of any infirmity in the sale. But if the party entitled to avoid the sale is not by reason of laches or otherwise chargeable with the responsibility for this condition, the fact that a resale is impracticable should not deprive him of all remedy for the wrong which he has suffered. It has always been the pride of courts of equity that they will so mould and adjust their decrees as to award substantial justice according to the requirements of the varying complications that may be presented to them for adjudication. (Story's Equity Jurisprudence, secs. 28, 439; 1 Pomeroy's Equity Jurisprudence, sec. 60.) And so, if, in a case like this, the creditor and the trustees have put the property in such condition that a new sale cannot be had, they must submit to such decree as will most fairly redress the injury which they have inflicted. If relief cannot be given without compelling the creditor to accept the property wrongfully purchased by him at its true value, he may be held to a purchase at such value. This is, in effect, the principle applied in *Blood* v. *Munn,* 155 Cal. 228, [100 Pac. 694]. There a mortgagee of property which included a homestead had released the property other than the homestead upon payment

of $425. The property so released was worth eleven hundred dollars and over. In an action to foreclose the mortgage, it was held that the owners of the homestead were entitled to a credit upon the mortgage debt of the real value of the property released. This result necessarily followed from the fact, common to that case and the one before us, that the homestead property was only secondarily liable for the debt, and that any other holding would deprive the owner of the homestead of the right to have the property primarily liable first exhausted. There, as here, the creditor was held to a bargain (i. e., the release of eleven hundred dollars of his demand) to which he had never assented, but this was not deemed an obstacle to granting to the defendants the only relief which was possible. In *Drury* v. *Cross*, 74 U. S. 299, [19 L. Ed. 40], the supreme court of the United States approved a decree which, in form and effect, was very like the one here made. There the directors of an insolvent railroad corporation had, in order to relieve themselves of liability on indorsements made by them, combined with certain creditors and bondholders to have the assets of the road sold on foreclosure. By a fraudulent contrivance, the amount of bonded indebtedness outstanding was made to appear far greater than it was, and, as a result, the favored creditors succeeded in destroying competition at the sale and purchasing the property at a price greatly below its real value. The decision of the court was that the purchasers must be held liable to other creditors for the full value of the property purchased.

These authorities furnish ample support for the right of a court of equity, under appropriate circumstances, to grant the form of relief embodied in the decree appealed from. What we have said is also, we think, a sufficient answer to the point that a ratification of the sale of the Broadway parcel is a ratification of the entire sale. This point is, indeed, but a statement, in another form, of the proposition first discussed. If the defendant is entitled to a decree protecting her rights in the homestead, notwithstanding the fact that the sale of the other property cannot be annulled, it must follow that she does not waive her right to such protection by failing to ask for a resale of both parcels. Furthermore, it is not entirely accurate to say that the defendant has ratified the sale of the Broadway property. The only sale was one of both parcels

for $57,177.40. The Broadway piece was not sold for any specific part of this amount, and the defendant did not ask that any actual sale be permitted to stand. What she did seek and obtain was a decree that the bank be put in the position which it would have occupied if it had purchased the Broadway piece for the sum which would have been realized on a sale properly conducted. This is not a ratification of the sale which was in fact made.

But the difficulty with the case before us is that the record does not show the existence of any circumstances which would render it impracticable to order a new sale of the entire property. As has been said, a decree requiring the purchaser at the trustees' sale to take the Broadway parcel at its true value can be justified only on the ground that it is, under the circumstances, the only relief that equity can give. It is a substitute for the natural relief of ordering a new sale, and is resorted to because such new sale cannot be had. Neither the pleadings nor the findings disclose any reason why, in this case, the court could not have ordered a sale of all the property according to the rights of the parties, that is to say, a sale, first of the Broadway property, and, in the event of a deficiency after crediting the debtor with the rents and profits of this piece, a sale of the homestead. The pleadings of the defendant allege that the title to the homestead, conveyed to the purchaser by the trustees, still remains in the plaintiff, and the court so finds. But there is no averment or finding that the title to the Broadway parcel is not in a like situation. It is true that the plaintiff, in its answer to the cross-complaint, alleged that it had parted with the Broadway property to *bona fide* purchasers for value, and that it had lost the means of accounting for the rents and profits, but these allegations were, on motion of the defendant herself, stricken from the answer. She cannot, of course, after having induced the court to eliminate these averments from the issues, rely upon them as establishing a state of facts which she should have pleaded and proved as a foundation for the decree obtained by her. The pleadings and findings, as they stand, do not justify the conclusions of law and the judgment.

But, inasmuch as it is more than probable that the facts authorizing the decree rendered actually exist, we cannot assent to the claim of appellant that judgment in its favor

should be ordered on this appeal. An amendment to the answer and cross-complaint, together with evidence establishing the truth of such amendment, would authorize the granting to defendant of the relief embodied in the decree here appealed from.

4. The plaintiff relies, in response to defendant's cross-complaint, upon the defense of laches and that of the statute of limitations. (Code Civ. Proc., secs. 343, 338, subd. 4.) It is conceded in the reply brief that, "if the defendant was entitled to have the sale set aside as to the homestead alone without vacating the sale as to the Broadway piece, the plea of the statute of limitations and of laches ought to be overruled." We have already seen that the defendant may be entitled to this very relief. In that aspect the question of limitations and laches need not be further considered. We shall not at this time undertake to decide whether, if it should turn out that a resale of both parcels is the only remedy open to respondent, she should be held barred of her right to seek this relief. If this question should ever arise, which is hardly probable, it will be time enough to then dispose of it.

The judgment is reversed, with directions to the trial court, after permitting the defendant to amend her pleadings, to take such further proceedings as may not be inconsistent with this opinion.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.