## IMBODEN VS. HUNTER.

It is a rule in equity that a trustee to sell for others, or a mortgagee with power of sale, is not allowed to purchase, directly or indirectly, for his own benefit, at the sale: And it matters not, in the application of the rule, that the sale was *bona fide*, and for a fair price: at the instance of the *cestui que trust*, or person interested, within a reasonable time, a court of equity will set aside the sale, as of course: *In such a case, a re-sale ordered, the property to be set up at the bid of the mortgagee.*

A trustee is not entitled to compensation for his trouble and attention, where he accepts the trust coupled with an interest, and the deed expressly provides for the payment of the expenses of the trust, but is silent as to compensation.

*Appeal from Randolph Circuit Court in Chancery.*

Hon. WILLIAM C. BEVENS, Circuit Judge.

FAIRCHILD, for the appellant.

HEMPSTEAD, for appellee.

Mr. Justice COMPTON delivered the opinion of the Court.

Absalom Looney was indebted to Washington R. Hunter in the sum of $1,276 80, by bond dated the 27th March, 1855, and payable, with interest, on the 1st of August next following, to secure which, he executed to Hunter a mortgage on certain negro slaves, with power of sale; in which he stipulated that, on failure to pay the bond at maturity, Hunter should have authority to take possession of the slaves, and, after advertisement, sell them, or a sufficiency thereof to pay the amount due; and should then transfer or pay over the surplus, if any, whether of slaves or money, to Looney. Looney having failed

to make payment, Hunter, in the exercise of the power con-
ferred, sold the whole of the slaves, on the 10th of April, 1857,
at public sale.  Prior to the sale, Looney, for a valuable con-
sideration, executed to William R. Cain an order by which
Hunter was directed to deliver to Cain any surplus, either of
slaves or money, which might be left after satisfying Hunter's
debt; which order Cain, for a valuable consideration, assigned
to John H. Imboden, who, on the 24th April, 1857, exhibited the
bill in this case, alleging, in addition to the facts above stated,
that there was an overplus of money in Hunter's hands, and
that the negro woman, Hannah, and her children, mentioned
in the mortgage, were bid off at the sale by Samuel McLane
for the benefit of Hunter; and praying, in the alternative, that
the residue of the money arising from the sale be decreed to
him, or that the sale be set aside, and a re-sale made under the
direction of the court, as to Hannah and her children, and for
general relief.

On appeal by both parties from the final decree of the Chan-
cellor, the main question argued in the court, is, whether the
Chancellor erred in refusing to set aside the sale.

That McLane was a mere nominal buyer of the slaves, and
Hunter himself the real purchaser, is an irresistible conclusion
from the evidence in the record; and it is a stern rule of equity
that a trustee to sell for others, is not allowed to purchase, either
directly or indirectly, for his own benefit, at the sale.  He can-
not be both vendor and purchaser.  As vendor, it is his duty to
sell the property for the highest price, and as purchaser, it is
his interest to get it for the lowest, and these relations are so
essentially repugnant—so liable to excite a conflict between
self-interest and integrity, that the law positively forbids that
they shall be united in the same person.  And it matters
not, in the application of the rule, that the sale was *bona fide*,
and for a fair price.  The enquiry is not whether there was
fraud in fact.  In such a case, the danger of yielding to the
temptation is so imminent, and the security against discovery
so great, that a court of equity, at the instance of the *cestui*

*que trust*, if he applies in a reasonable time, will set aside the sale, as of course. The rule is not intended to remedy actual wrong, but is intended to prevent the possibility of it. The situation of the party, *itself*, works his disability to purchase. *Davone vs. Fanning*, 2 *John. Ch. Rep.* 252; *Wormley vs. Wormley*, 8 *Whea.* 421; *Michond vs. Girod*, 4 *How.* (*S. C.*) 503; *Lewis vs. Hilleman*, 18 *Eng. Law & Eq.* 34; *Fox vs. Mackreth*, 1 *Lead. Cas. in Eq. top page* 159 (*Amer. note.*)

But some of the decisions to which we have been referred maintain the proposition, contended for by the counsel for Hunter, that the case before the court falls within a recognized exception to the general rule. Thus, in South Carolina, a sale by the mortgagee under a power contained in the mortgage, was sustained by the Court of Appeals, as not being obnoxious to the rule, that a trustee to sell cannot purchase at his own sale. In delivering the opinion of the court, Chancellor Johnston said: " The opinion of the court (in which, to avoid being misconceived, I state that I do not concur,) is, that a mortgage of personalty does not fall within the principle which prevents a trustee to sell from buying at his own sale. It is my province to state the reasons which have conducted my brethren to this conclusion. A creditor holding a mortgage security is a trustee to sell, not only for the benefit of the mortgagor, but for his own also. If he were not at liberty to bid, he would be deprived of the means of protecting his own interest as creditor. The mortgagor is at liberty to bid also, and has thus the means of entering into fair competition with the mortgagee and compelling him to give a fair and full price. But the court is of opinion that although a mortgagee does not stand in that relation to the mortgagor, which would subject him to an order setting aside, as of course, his purchase at his own sale; yet that he holds such a trust character, as to throw the burden on him of supporting his purchase, by proof of fairness." *Black vs. Hare & Black*, 2 *Hill Ch. Rep.* 622. The same conclusion was reached by the Supreme Court of Texas, in *The Howards vs. Davis*, 6 *Texas Rep.* 174. The court said: " That a trustee

cannot be the purchaser of a trust estate, without leave of the court, is an established rule in equity. A mortgagee is a trustee, but in a qualified sense. He does not hold for the benefit of others, but for himself. He is a *cestui que trust*, as well as trustee. He has an interest in the property. It is pledged expressly to secure his claim; and were he deprived of the power to purchase, he might suffer great loss by its sale at a low price. He has an interest that the bid shall amount to his incumbrance, and that the property be not sacrificed, to the injury as well of the mortgagor as the defeat of his own claim; as this may be the only fund for the discharge of his debt. Sales at foreclosures, whether under a power or by decree, are open and public, and are made after long notice; and it is the interest of the mortgagor, that the mortgagee should enter into the competition at the sale."

We do not think that the reasons given by the learned judges, who decided these cases, are sufficient to warrant a relaxation of the general rule. How the property would be saved from sacrifice, as regards the interest of the mortgagor, by permitting the mortgagee to bid, it is not easy to perceive. If the mortgagee were allowed to bid, it would still be to his interest to purchase at the lowest price. Would he be likely to give more than he would be forced to give by the competition of other bidders? Or, if a mortgagee, liberal enough to do otherwise, might be found, would not self-interest dictate an inadequate price? The result, in either case, would be to allow the mortgagee, in the absence of competition, to purchase the property on his own terms. True, it may be necessary, in some instances, that the mortgagee should bid, to protect his own interest; but this, it seems to us, furnishes no good reason why the fundamental principle, which prohibits him from being both vendor and purchaser, should be modified. In all such cases, his remedy, if the mortgagor will not consent that he shall bid at the sale, is to apply to a court of chancery; and if it is there made to appear, that his interest may be sacrificed unless he is permitted to bid, the court will divest him of the character of

40

trustee, that he may be enabled to do so, and will substitute the master or other person to execute the trust; provided the court is satisfied that the interest of the mortgagor will not suffer by reason of such permission. _De Caters vs. Le Ray &_ _De Chaumont_, 3 _Paige Ch. R._ 178. Whether the mortgagee is a trustee in a technical sense, or is so in a qualified sense only, can make no difference. The rule is not confined to persons who are trustees within the more limited and technical signification of the term, or to any particular class of fiduciaries, but applies to all persons placed in a situation of trust or confidence with reference to the subject of purchase. It embraces all who come within its principle, permitting no one to purchase property and hold it for his own benefit, where he has a duty to perform, in relation to such property, which is inconsistent with the character of a purchaser on his own account, and for his individual use. _Van Epps vs. Epps_, 9 _Paige Ch. Rep._ 237; _Torry vs. Bank of Orleans, Ib._ 649; _Dobson vs. Racey_, 3 _Sandford_ 251; _Voorhees vs. The Presbyterian Church of Amsterdam_, 8 _Barbour's S. C. R._ 136; _Hawley vs. Cramer_, 4 _Cowen_ 717. The sale of the property is entrusted to the mortgagee; and because he is beneficially interested, it is not less his duty to sell for the highest price, nor less his interest to purchase for the lowest—and here we have the same struggle between integrity and self-interest, the same temptation to abuse, and the same danger of imposition " inaccessible to the eye of the court," which the general rule is designed to prevent.

In _Hyndman vs. Hyndman_, 19 _Vermont_, 9—which was a bill to redeem—the contract between the parties was held to be a mortgage, with power of sale; and it appearing that the mortgagee, in the exercise of the power, had sold the premises, and become the purchaser, the mortgagor was allowed to redeem. The court said: " The only other ground upon which the defendant claims to hold the estate free from the plaintiff's equity of redemption, is, that, in pursuance of the power of sale, he caused the estate to be sold at auction, _and became himself the purchaser_. Such sales have always, in the English chancery,

and in this country, unless when the matter is controlled by the statute, been held voidable, at the election of the mortgagor, or *cestui que trust*, unless he delay for an unreasonable time to make his election—in which case he will be held to have confirmed the sale by his acquiescence." The same principle was decided in *Middlesex Bank vs. Minot*, 4 *Metc.* 325. And in *Wade vs. Harper*, 3 Yerg. 383, a deed of trust was executed by the debtor to a trustee for the benefit of the creditor, to whom power was given to direct the trustee when to sell, and whether for ready money, or on credit, thus giving the creditor control of the sale: payment was not made, the property was sold, and the creditor became the purchaser: Held, that the sale, however fair and free from fraud, should be set aside, at the election of the heirs of the debtor: "We cannot distinguish the relation of (the creditor) to this transaction," said CATRON, C. J., "from that of a commissioner of a bankrupt, where the trustee makes the sale of the assets. In such case, the commissioner has a duty to perform, to make the estate bring the best price, and cannot buy without being subject to have the sale set aside at the election of creditors. In all cases where the property is vested in a trustee, with power to sell, or where there is a power in one to sell the title remaining in the *cestui que trust*, or the aid of a solicitor is called in, or there is an agent to aid in effecting the sale, such persons cannot be permitted to buy the property, denuded of the trust, and if any interested, especially the *cestui que trust*, calls in question the purchase, that it was fair is no defence; the trust attends it." In New York, it is provided by statute that a mortgagee, with power of sale, may purchase; and wherever the courts of that State have recognized the validity of such purchases, the decision will be found to rest upon the statute. See *Jackson vs. Colden*, 4 *Cowen* 266; *Slee vs. Manhattan Company*, 1 *Paige* 48; *Wilson vs. Troup*, 2 *Cowen* 195. The principle decided, however, in *Dobson vs. Racey*, 3 *Sandford* 60, clearly shows that, in the absence of statutory provision authorizing the mortgagee to purchase, he would not be permitted to

do so. There, the debtor, in July, 1817, mortgaged a tract of land to the creditor, and in October following, the debtor being about to leave the State, executed to the creditor a power of attorney authorizing him to sell the mortgaged premises, in such manner as he might deem proper; and, after discharging the mortgage debt out of the proceeds of the sale, to pay over the surplus to the wife of the debtor. The debtor departed, and died abroad; and, in November, 1817, the creditor by virtue of the power of attorney, conveyed the mortgaged premises to a third person, as nominal purchaser, who, two days afterwards, conveyed to the creditor. On a bill to redeem, THE ASSISTANT VICE CHANCELLOR said: " The validity of purchases made by fiduciaries, of the property entrusted to them, has been much considered recently in the courts of equity, both in this State and in England. And it is now a settled rule, both there and here, that no party can be permitted to purchase an interest, where he has a duty to perform which is inconsistent with the character of purchaser." And he said the rule was applicable to the case before him, whether the creditor was to be regarded as a trustee or as an agent: that his interest as purchaser was in direct conflict with the interest of the debtor, his constituent, or *cestui que trust;* that his purchase caused one of those collisions between interest and duty, which equity wisely and resolutely prohibits; and that it made no difference, in the application of the rule, that no fraud was committed, and that the creditor paid a fair price for the property. See, also, Mr. Hill's work on Trustees (2 Amer. Ed.) marg. page 158, (in note), where it is laid down that a mortgagee, with power of sale, cannot purchase, citing *Waters vs. Givens,* 11 *Cl. & F.* 648.

We scarcely need add, that a mortgagee, without power of sale, may purchase the same as he could at sheriff's sale under execution at law: because, in such case, he has no duty to perform inconsistent with the character of a purchaser. *Murdock's Case,* 2 *Bland. Ch. Rep.* 468; *Lyon vs. Jones,* 6 *Humph.* 533.

The court did not err in denying commissions to Hunter, as trustee. Though the English rule has been modified in this

country, and commissions are allowed in some cases, still the trustee is entitled to none, where, as in this case, he accepts the trust coupled with an interest, and the deed expressly provides for the payment of the expenses of the trust, but is silent as to whether he shall have compensation for his trouble and attention.

It is conceded in argument that Hunter was guilty of no actual fraud or unfairness in the sale of the slaves; he was therefore entitled to his costs, and the court should have so decreed.

The decree, except so much of it as denies commissions to Hunter, must be reversed, and the cause remanded to the court below, with the following directions: That, under the directions of the court, the slaves, Hannah and her children, be re-exposed to public sale by the master in chancery, or other person appointed by the court for that purpose; that the slaves be put up at the amount of the former sale, and interest thereon from the date of such sale to the time of the re-offering, and if they shall not sell for more than that sum, the sale heretofore made, shall, in all things, stand confirmed, but if they shall sell beyond that sum, then the former sale shall be held to be vacated; that the costs of the cause in the court below, together with the necessary expenses attending both sales be paid out of the proceeds of the sale; and that the residue of such proceeds be applied and disposed of, as in and by the deed of mortgage, and the order of Looney, assigned to the complainant, is directed.

One half the costs in this court will be decreed against Imboden, and the other against Hunter.

Mr. Justice FAIRCHILD did not sit in this case.