**VAUGHN v. VAUGHN et al.**

No. 7834—Opinion Filed Jan. 30, 1917.

(162 Pac. 1131.)

1. **Executors and Administrators—Sale—Purchase by Administrator.**

An administrator cannot directly or indirectly purchase the property of the estate he represents, nor be interested in any sale thereof.

2. **Same—Administrator's Interest in Sale—Trust.**

Where, under agreement with the creditors approved by the county court, an administrator purchased all the property of an estate he represented, and, instead of satisfying a mortgage on certain realty thereof, permitted such mortgage to be foreclosed and with money derived from the estate purchased the same at foreclosure sale, held, in a suit by the heirs against the administrator, that the district court had jurisdiction to declare a trust as regards such property, and that the administrator should be treated as a trustee holding the real estate so purchased for the heirs.

(Syllabus by Bleakmore, C.)

Error from District Court, Atoka County; J. H. Linebaugh, Judge.

Action by Margaret Louise Vaughn, by her next friend and guardian, F. A. Locke, and Nona Hooper, nee Vaughn, against T. Vaughn. Judgment for plaintiffs, and defendant brings error. Affirmed.

Utterback & McDonald, Robert M. Rainey, and Cottingham & Hayes, for plaintiff in error.

Head & Barrett, for defendants in error.

Opinion by BLEAKMORE, C. Mrs. E. J. Vaughn died intestate, leaving surviving, as nearest of kin, her husband, T. Vaughn, and Nona Hooper and Margaret Louise Vaughn, grandchildren.

In August, 1908, T. Vaughn was appointed administrator of her estate, which consisted of certain town lots upon which was sit-uated a brick store building and warehouse mortgaged to the extent of $2,500, a stock of merchandise, notes, and accounts, and some unincumbered realty of little value. The estate was largely indebted. By order of the county court the mercantile business of decedent was conducted by the administrator until March, 1910, when he entered into the following agreement with certain creditors:

"It is hereby agreed, subject to the approval of the court that the creditors above named, and the said T. Vaughn, administrator, have agreed upon D. H. Linebaugh, as trustee, to take over for the benefit of creditors, the following assets of said estate, to wit: * * * Whereas, the furnishing and fixtures, now on hand and the balance of the notes and open accounts belonging to said estate, be now turned over to T. Vaughn, and to vest in him absolutely, as his sole and separate property; and whereas, in consideration of the above and foregoing, the said T. Vaughn will execute and deliver to the said D. H. Linebaugh, as trustee for the benefit of the creditors of the estate of E. J. Vaughn, deceased, a certain promissory note, sufficient in amount to cover the entire indebtedness due the creditors of the estate, said note to draw interest, * * * and said note shall be secured by second mortgage on all of the real estate belonging to said estate of E. J. Vaughn, deceased."

Based upon this agreement and the report of the administrator made pursuant thereto, the county court entered its order as follows:

"And it appearing to the court from the final account of T. Vaughn, administrator, and from evidence adduced orally and documentary that T. Vaughn, as the administrator of the estate of E. J. Vaughn, deceased, had entered into a stipulation with (certain creditors), whereby it was stipulated and agreed that the said T. Vaughn should file his final account as administrator, and this court might make an order discharging the said T. Vaughn, as administrator, subject to the stipulations filed with said final account and it further appearing from the stipulations filed with said account of T. Vaughn

as administrator of the estate \of E. J. Vaughn that this court may make an order vesting all of the property belonging to said estate in and to T. Vaughn, subject to the provisions contained in the stipulations filed.

"It is therefore ordered, adjudged and decreed by the court that all live stock and merchandise, notes and accounts and all personal property whatsoever belonging to the estate of E. J. Vaughn, deceased, be and the same is hereby distributed, transferred, vested and assigned and conveyed to the said T. Vaughn, to have and to hold the same subject to the provisions contained in the stipulations filed herein with said final account, and it is further ordered, adjudged and decreed by the court that the real estate belonging to said estate described as follows: * * * To have and to hold the same together with all and singular the hereditaments, appurtenances thereunto belonging and appertaining to the above-named T. Vaughn, his heirs and assigns forever, subject to the provisions of the stipulations filed with said final account of the said T. Vaughn as administrator of said estate. It is further ordered by the court that the said T. Vaughn as administrator of the estate of E. J. Vaughn, deceased, be and he is hereby fully and completely discharged as such administrator, and said final account of the said T. Vaughn as such administrator is hereby in all things approved and confirmed in accordance with the stipulations filed with said final account."

A portion of the indebtedness secured by the mortgage on the lots upon which the store building and warehouse were located being unpaid, the same was sold upon foreclosure to T. Vaughn, for $1,500, subsequent to his discharge as administrator.

On June 2, 1914, this action was commenced in the district court of Atoka county, by Nona Hooper and Margaret Louise Vaughn, a minor, by her guardian, as plaintiffs, against T. Vaughn, as defendant, seeking an accounting, declaration of trust, partititon, etc., it being alleged by their pleadings, among other things:

"That the defendant disregarded his fiduciary relation and obligation to the plaintiffs; acted without authority of law in purchasing the assets of the estate while he was administrator; that the management of the said estate by the defendant, after the death of E. J. Vaughn, and after his discharge as administrator, was done for the purpose and with the intention of defrauding the plaintiffs out of their pro rata share of said estate; that the defendant was discharged as administrator and the property of the estate was sold and turned over to him; that plaintiffs have never received any property from said estate, or the administrator thereof; that the purchase of said property by the defendant, while acting as such administrator, constituted a fraud upon the rights of the plaintiffs, and that defendant should be held to hold the same in trust for these plaintiffs, and that the real estate should be partitioned among the heirs; that the said T. Vaughn, disregarding his fiduciary relation to the plaintiffs, and disregarding his duty as administrator, allowed the said property mentioned to be sold under mortgage foreclosure, and bought the same in with funds belonging to the estate of E. J. Vaughn, and took the title thereto in his own name."

The court below found the facts and rendered judgment as follows:

"That on the 17th day of August, 1908, defendant was appointed administrator. That on the 10th day of September, 1908, the defendant filed his inventory and appraisement showing assets belonging to the estate in the sum of $20,740. That under order of the county court, the administrator was permitted to continue business until March 21, 1910, when 'by agreement with a majority of the creditors and with the approval of the county court,' the property and assets of the estate were turned over to him, under and through and whereby he executed notes and gave his security for the payment thereof, amounting to the sum of $11,261.40. That on the 14th day of December, 1909, the said T. Vaughn, as administrator, filed an additional report, showing that he had paid $9,254 to several creditors of the estate; that liabilities of the estate in the sum of $11,218.63, and the resources at that time of $26,766.28, and the resources in excess of liabilities amounted to $15,447.65. That on March 1, 1910, the administrator filed what is styled an annual or final account of administrator in which he sets out the assets of the estate in the sum of $24,136, and the liabilities in the sum of $11,361.40. That he had received, to the best of his knowledge, while administrator, $45,000. That he had paid out, while administrator, $30,924.70. That there is attached to this final report a stipulation signed by Winfield 'S. Farmer, as administrator evidently intended to be signed by him as attorney for the administrator. It is also signed by D. H. Linebaugh, representing several creditors, and signed by other creditors. The stipulation is marked Exhibit C and attached to the final report, which report was sworn to on the 28th day of February, 1910, and approved March 25, 1910, and the same day an order entitled 'a decree of distribution' was entered, in which it was found that the outstanding indebtedness against the estate amounted to $11,351.40, setting out in detail the creditors and the amount due each; and, in this order, it was adjudged by the court that all of the live stock and merchandise, notes, and accounts, and all personal property belonging to said estate be and the same is hereby distributed, transferred, and assigned and conveyed to the said T. Vaughn, but the holding clause of the order provides, 'that it is subject to the provisions of a stipu-

lation filed with said final account above referred to,' and in this order T. Vaughn was finally discharged as administrator. The court further finds that after the defendant T. Vaughn had been discharged as administrator, a foreclosure suit was filed by the Oklahoma State Bank to foreclose a mortgage on the N. 42 feet of lots 5 and 6 and lots 3 and 4 in block 7, Stringtown. That a decree was rendered in favor of the plaintiff for the sum of $1,250, with $50 attorney's fee, interest and costs, and that the property was sold to the defendant T. Vaughn for $1,500. That at the death of E. J. Vaughn, she left surviving her as her sole heirs the defendant T. Vaughn, her husband, and Nona Hooper, nee Vaughn, and Margaret Louise Vaughn, grand-daughters, the plaintiffs in this action, and that the property of said estate descended, subject to the debts, one-half to Vaughn, and one-half to the plaintiffs, equally. That at the time Vaughn took the property under the final order of the court, in pursuance of the said agreement with creditors, and that the property consisted of a stock of merchandise, certain notes and accounts, lots and improvements. * * * some horses, the value of which is $300. That in taking over this property the defendant T. Vaughn executed to D. H. Linebaugh, as trustee, his notes in the total sum of $11,351.40, and secured the payment thereof by turning over to Linebaugh a great many of the notes due the state, and by executing a mortgage upon the lots in controversy, and thereafter paid this indebtedness by paying first note in full, and compromising or discounting the balance; the total amount paid by him in satisfaction of said $11,351.40 being $9,000.00. That the value of the personal property he received at the time he took same over under this final order of the court exceeded the $11,351.40 and all other amounts he paid out, except the $1,500 on the mortgages, the sum of $1,500, and that the plaintiffs were entitled to one-half, or $750. That defendant should be credited with $750, paid out on the foreclosure. That at the time T. Vaughn took over this property under the final order of the court and agreement with creditors, the personal property was worth the total sum of $19,141. That the liabilities were $11,-351.40.

"The court thereupon adjudged the title to one-half of said real estate to be in plaintiffs equally."

Numerous errors are assigned, the principal ones urged for reversal being: (1) That the trial court was without jurisdiction of the subject-matter of the action; (2) that the order of the county court decreeing a distribution of the estate of decedent was conclusive and not subject to collateral attack in this action; and (3) the findings and judgment of the trial court are not supported by the evidence, and are contrary to the equity of the case.

It is certain that in consideration of his personal undertaking to discharge the indebtedness of the estate, defendant, while acting as administrator, under order of the county court made upon agreement with the creditors, received and appropriated the then entire assets of the estate as his individual property.

By section 6409, Rev. Laws 1910, it is provided:

"No executor or administrator must directly or indirectly purchase the property of the estate he represents, nor must he be interested in the sale."

Obviously the transaction here involved constituted a purchase of the property of the estate by the administrator, within the foregoing statutory inhibition, and was therefore voidable as between the parties to this action.

The provisions of section 6409, supra, are also applicable to sales by guardians; and in Allison v. Crummey, 64 Okla. 20, 166 Pac. 691, it is held:

"A guardian cannot directly or indirectly purchase any property belonging to the estate of his ward, nor must he be interested in any sale thereof."

"A sale by a guardian of real estate belonging to his ward to himself through the interposition of a third person is not void absolutely, but is voidable in an action brought to set aside same as against the purchaser or guardian or some one claiming under him with knowledge of the circumstances of the sale, or one who was not a bona fide purchaser or incumbrancer for good and sufficient consideration and without notice."

In Chastain v. Pender, 51 Okla. 133, 152 Pac. 833, this court quotes with approval from Frazier v. Jeakins, 64 Kan. 615, 68 Pac. 24, 57 L. R. A. 575, as follows:

"Was the sale void in 'the sense that it was subject to collateral attack? Our judgment is that it was. * * * We do not understand that courts by their use of the term 'void' always mean that utter negativeness which is the equivalent of nonexistence, but they more often mean that which, relatively to persons, circumstances, conditions, or forms of action, may be treated as though it were nonexistent. In this latter sense there is little distinction between it and the word 'voidable.' Really, as often used in the law, there is an interchangeability of meaning between the two words. * * * Therefore, in order to characterize the guardian's sale and deed as 'void,' in the sense in which that word is most frequently used in the law, it is not necessary to regard them as inexistent. They have a form of existence and, under certain circumstances, they may be allowed or may acquire the substance of existence. The plaintiff in this case might

have ratified them by express act or deed; she might have estopped herself by some course of conduct to question their validity, or she might have allowed lapse of time to bar her right to recover on the score of their invalidity; but until, by ratification, estoppel, or limitation, she has given effect to them, she is privileged to treat them as void, and of no effect. As to her, they are void and of no effect, because they failed to pass the title to her land. In order to characterize an act or transaction as void, it is not necessary that it should be a nullity as to everybody and for all time and under all circumstances. If the act or transaction failed to deprive interested persons of their rights or titles, failed to confer them on some one else, the act or transaction is void as to such persons. If the act or transaction requires ratification, estoppel or limitation to transfer the right or title, it is void until the ratification has been made, the estoppel has occurred, or the time has elapsed, and even then the right or title does not pass by virtue of the original act or transaction, but passes by virtue of the ratification, or is founded on the estoppel, or is set at rest by the lapse of time. The authorities seem to us strong and convincing that ejectment, although a collateral proceeding, will lie to recover a title claimed under a trustee's sale to himself, or in effect to himself, as in this case."

The Supreme Court of Arkansas, in Imboden v. Hunter, 23 Ark. 622, 79 Am. Dec. 116, announced the general doctrine of which our statute is dictatory, as follows:

"It is a stern rule of equity that a trustee to sell for others is not allowed to purchase, either directly or indirectly, for his own benefit, at the sale. He cannot be both vendor and purchaser. As vendor, it is his duty to sell the property for the highest price, and as purchaser, it is his interest to get it for the lowest, and these relations are so essentially repugnant, so liable to excite a conflict between self-interest and integrity, that the law positively forbids that they shall be united in the same person. And it matters not, in the application of the rule that the sale was bona fide, and for a fair price. The inquiry is not whether there was fraud in fact. In such a case, the danger of yielding to the temptation is so imminent, and the security against discovery so great, that a court of equity, at the instance of the cestui que trust, if he applies in a reasonable time, will set aside the sale, as of course. The rule is not intended to remedy actual wrong, but is intended to prevent the possibility of it. The situation of the party, itself, works his disability to purchase. * * * The rule is not confined to persons who are trustees within the more limited and technical signification of the term, or to any particular class of fiduciaries, but applies to all persons placed in a situation of trust or confidence with reference to the subject of the purchase. It embraces all that come within its principle, permitting no one to purchase property and hold it for his own benefit, where he has a duty to perform, in relation to such property, which is inconsistent with the character of a purchaser on his own account, and for his individual use."

The order of the county court, designated "decree of distribution," did not contemplate a distribution of the estate to the persons here admittedly entitled thereto under the law, but is in effect a confirmation of an unlawful sale of the property of the estate by defendant as administrator to himself as an individual. That it was so regarded by defendant as late as February 23, 1913, is evidenced by his letter to the plaintiff, Nona Hooper, of that date, as follows:

"On March 21, 1910, I went into the probate court and made this agreement with the creditors. That is the firms that the estate owed, prior to and after your grandma's death. Up to that date, March 21, 1910, I turned the bulk of the property over to them to let me do some business in my own name. But I had to give them my notes. If what I turned over to them did not pay them, I would meet the balance. I have not yet got the old debts settled, but I think, without doubt, it will be done in 90 days or less. Now this is the bad side of it, and I will tell you my plans, and if they fail I can't help it. I am gradually working up a good business. It has doubled in two years. I am gradually getting all the real estate into my hands. It was mortgaged long before your grandma's death by her as it was all in her name. If I succeed, as it looks like I will, in 90 days, I will mortgage the real estate again if I can, and make a satisfactory settlement with you and Louise. * * *"

We are of the opinion that the trial court had jurisdiction of the action. Allison v. Crummey, Chastain v. Pender, supra.

The sufficiency of the evidence to sustain the findings of the court below being challenged by the defendant, we have carefully considered the entire record before us, and conclude that such findings are supported by the evidence.

Admittedly when E. J. Vaughn died her entire estate, subject to the claims of creditors, vested one-half in plaintiffs and one-half in defendant. According to the testimony of defendant himself, he was destitute of means at the time he took over the estate, and it was out of the proceeds thereof and the profits derived from the mercantile business that he procured the money with which, instead of satisfying the lien thereon, he purchased the mortgaged realty at the foreclosure sale. We think the trial court properly treated defendant as a trustee holding the property in trust for the plaintiffs.

The judgment should be affirmed.

By the Court: It is so ordered.