16743

HONEYWELL *ET AL.* v. DOMINICK *ET AL.*

(75 S. E. (2d) 59)

366

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Appellant,*

*Messrs. Waring & Brockinton,* of Charleston, *for Respondents,*

May 12, 1953.

STUKES, Justice.

Bayard Dominick, a resident of Westchester County, New York, died May 1, 1941, seized and possessed of a tract of land of 3404 acres in Jasper County of this State, known as Gregorie Neck Plantation, which he used as a part-time winter home. He was survived by his widow, Alice Hoyt Dominick, and one child, a son Richard B. Dominick, now over thirty years old, married and, himself, the father of two children. The decedent left a will which was probated in the Surrogate's Court of his New York home-county and afterward an exemplified copy was filed in the probate court of Jasper County and the executor and executrix were later there issued ancillary letters testamentary. They are the widow and the brother of testator, Gayer G. Dominick. They, as executrix and executor, and as trustees under the terms of the will were vested with a general power of sale and reinvestment.

The land above referred to passed under the residuary clause of the will whereby a trust was created, the income therefrom payable to the widow for life and upon her death the corpus of the trust shall be delivered to testator's son, Richard B. Dominick, if then thirty years of age, which he already is; and if the son should predecease the widow, the corpus of the trust shall be paid to his issue surviving, or if none such, then to the brother of testator and his two sisters, or "to the survivor or survivors of them equally, share and share alike, or, if any shall have died leaving lawful issue, such issue shall take the parent's share, per stirpes and not per capita." A further presently important provision of the will is that the widow and son of testator shall be permitted to occupy the real estate, including that in Jasper County, without charge, the expense of upkeep of the property being imposed upon the residuary estate or trust.

The widow and brother of testator promptly qualified as executors and trustees and entered upon their duties of the administration of the estate but because of the usual tedious proceedings of such were not able to set up the trust until May 1, 1943. The appraisal of the South Carolina plantation for State inheritance tax purposes was made on June 27, 1941, and the valuation was $53,000.00.

The executor testified that the plantation was quite burdensome to maintain, the annual average expense of which was, according to his testimony and that of the superintendent, about $15,000.00, to which testimony fuller reference will be later made. In view of the right of the widow to such maintenance for her free occupancy during her lifetime, and in view of her individual ownership of the tangible personal property on the plantation, which could not be made to yield any substantial revenue without further large investment, difficult too on account of the then war conditions, he proposed to the widow that she purchase the real estate at an appraised value and, in addition, surrender her life estate and right to the maintenance of the property by the estate and trust during her lifetime. To this she agreed

and another appraisal was had by competent and disinterested South Carolina appraisers, who valued the property as of June 24, 1942, at $50,000.00. It was thereupon agreed by the widow that she purchase the property at the median of the appraisals, which was $51,500.00; and deed was executed on Dec. 14, 1942, by the executor and trustee and by the widow, as executrix and trustee, to herself individually, and she paid the stated consideration into the estate. Her son, Richard, and the other adults, who might take under the terms of the will in the event of Richard's death without issue, approved the transaction, which was completed during the active administration of the estate and months before the trust was "set up." ·

The widow continued in possession under the deed to her individually, erected additional buildings and other improvements and also paid from her personal funds for the maintenance of the property—in all in excess of $130,000.00 —until May 1950 when she sold the plantation to the plaintiffs, now respondents in the present action, for the sum of $130,000.00, upon which she paid a broker's commission of ten per cent. These figures show that her acquisition and ownership were financially costly to her, rather than profitable.

At the request of the respondents upon their purchase in 1950 the executor and executrix executed and delivered a confirmatory deed, after their ancillary qualification in Jasper County.

In 1952 respondents contracted to sell the property to J. Spencer Janney, sole appellant here. He questioned the marketability of the title upon the contention that the widow was a trustee and her title, which she conveyed to respondents, is voidable at the option of the beneficiaries of the trust. This action was then brought by the respondents against Janney upon his contract to purchase and against the widow of the testator and her coexecutor and co-trustee under the will, against Richard B. Dominick, remainderman, and against all the contingent remaindermen under the terms

of the will, adults and infants, and the familiar John Doe and Richard Roe, the latter being fictitious names used to designate any other persons who might later claim an interest as beneficiaries under the will, including those unborn.

The first cause of action of the complaint recites that it is brought pursuant to the Uniform Declaratory Judgment Act, Sec. 10-2001 *et seq.* of the Code of 1952, for the adjudication of the rights of the parties to the action and particularly that the conveyance of the executors and trustees to Mrs. Dominick, individually, was effective to vest in her the fee simple title to the plantation; and that respondents are the owners of such by reason of their purchase from her. A second cause of action in the complaint is upon Janney's contract to purchase, specific performance of which is demanded.

The fiduciary defendants and Richard, the son of the testator and remainderman under the will, answered, setting up the facts which have been stated, and expressly renouncing all rights, present and future, in and to the property. The several answers of the other adult defendants of Dominick blood raised no issues and all renounced their present and future interests in the property under the will. The guardian ad litem for the infant defendants answered formally in their behalf, submitting their rights to the protection of the court. Janney's answer made no issue of fact and he admitted his contract to purchase the property from the respondents and that he had questioned their title on the ground that their grantor, Mrs. Dominick, had acquired the property individually by deed from herself and her coexecutor and trustee, which vested in her title voidable at the option of the beneficiaries of the trust which was created by the will of her husband.

Testimony was taken in open court, all parties being represented by counsel, including the guardian *ad litem* of the infant defendants in their individual capacities and as representatives of the class-contingent remaindermen—to which

they belong—*in esse* and unborn. The evidence will be reviewed in considerable detail, because of the controlling importance of the unusual facts, and at the risk of repetition of some of them which have already been stated.

The executor, a New York business man, testified by deposition in full substantiation of the allegations of the complaint. The plantation was a heavy financial burden to maintain. The annual expense before decedent's death and afterward during the administration ran from $12,000.00 to $31,-000.00. Only forty to fifty acres were under cultivation and only about twelve head of cattle and six hogs (which, with the other personalty, passed absolutely to the widow under the will) were kept there. To make it an income-producing property would have entailed further heavy expense which was considered extremely inadvisable. The then war conditions resulted in scarcity of labor, gasoline, shotgun shells for hunting and destroyed the marketability of the property for the purposes for which it was fit. The ownership by the widow of the personal property and her right under the will to occupy the plantation at the expense of the estate made it further impossible to obtain any other purchaser. After careful consideration, the executor determined that the estate could only be relieved of the costly financial burden of the plantation by sale of it to the widow, individually, if she should also relinquish her right to maintenance of it by the estate and to her life interest in the property. The executor, on his own initiative, proposed to the widow that she purchase the property on those conditions and at the appraised value of it. It was to her distinct disadvantage to purchase because she had the right to occupy it for life at the expense of the estate, but moved by sentiment because it had been used by her, her husband (testator) and son since about 1937 as a winter home, she acceded to the suggestion of the executor. Thereupon the matter was referred to the attorneys for the estate who advised that under the unusual circumstances the executors might sell the property to the widow (executrix) at the full market

value without deduction of the value of her life estate and right to maintenance; the attorneys further advised that the executor, his sisters, and testator's son, all of whom were contingent remaindermen, should consent to the sale, for themselves and their respective issues. The question was also referred to South Carolina counsel who suggested that although the trust had not yet been established and would not be for some time, the conveyance to the widow (executrix) should be executed by herself and the executor as such and also as trustees. These attorneys also advised another, independent appraisal of the property at its full market value, which was obtained as stated above. The transaction resulted in receipt by the estate of a fair and just price for the property and the relief of it of the financial burden of the maintenance of the plantation during the remaining lifetime of the widow.

The manager of the plantation who had served as such continuously from February 1, 1935, testified that from the time of the purchase of the property by the widow in December 1942 she personally paid all the costs of maintenance which ran from $12,000.00 to $15,000.00 per year, until her sale of the property in April, 1950; and she made permanent improvements as follows: a seawall, $6,000.00; barn and silo, $6,500.00; brick gate house, $5,000.00; fencing, $6,000.00; concrete tennis court, $3,500.00; and enlargement of the duck pond, $3,500.00 to $4,000.00. This witness testified to the public sale of comparable, larger property, that of Kress in 1941, 11,000 highly improved acres and many good buildings, for $100,000.00. A long-experienced Charleston real estate broker, who specialized in the sale of plantations and hunting preserves, testified that the price for which Gregorie Neck Plantation was sold to the widow was a fair one. The annual maintenance cost of $12,000.00 to $15,000-.00 was very moderate. Such places were not in demand during the war. He also testified to the sale of the Kress plantation, known as Buckfield, separated from Gregorie Neck by the A. C. L. Railroad, about 11,000 acres for $100,-

000.00 at public auction in 1941. It was more largely cultivated and improved than Gregorie Neck. This witness also handled the sale of the Hutton plantation in Beaufort County in 1942. It was an excellent hunting preserve, well equipped with a fine residence and other buildings, contained about 14,000 acres and sold for $115,000.00.

Upon the testimony which has been summarized, the court held that the sale was at a full and fair price, in good faith and was to the best interest of the estate, particularly because the purchaser, who was the widow of the testator and executrix, waived the value of her life estate in the property and her right to the free use and occupancy at the up-keep expense of the estate. The full market value of the property was received in addition to the relief of the burden of the maintenance expense during the remainder of the life of the purchaser. Thereafter during the period of her individual ownership, which was about seven and a half years, she expended for maintenance approximately $112,500.00 and, it may be added, made the extensive and expensive permanent improvements which have been mentioned. The decree recognized the ordinary rule that a trustee cannot purchase at his or her own sale; but resort was had to the statutes which were sections 9057 and 9058 of the 1942 Code, secs. 19-519, 19-520, Code of 1952, which authorize an executor to purcase at his sale, subject to liability if at an under-price. The judgment was also placed upon the ground that under the unusual circumstances of this case the court would have authorized the transaction at the time of it because beneficial to the estate, and will now therefore confirm it. It was held, in effect, that the unique facts take the case out of the general rule, which is stated in Restatement, Trusts, sec. 170, subsec. 1, comment (b), and bring it within the following rule of comment (f) : "The trustee can properly purchase trust property for himself with the approval of the court. The court will permit a trustee to purchase trust property only if in its opinion such purchase is for the best interest of the beneficiary."

The exceptions do not challenge the factual findings which have been stated, which indeed they could not, in view of the conclusive evidence. However, they assert that an executor and a trustee cannot under any circumstances validly convey to himself property of his estate or trust; and that the rights of minor and unborn contingent remaindermen, who might later take under the terms of the Dominick will, are unaffected by the decree. Also argued in the brief, although not raised by the exceptions, is the claimed inefficacy here of the cause of action for declaratory judgment but the contention need not be examined, even if there were a pertinent exception, in view of the presence in the complaint of the additional cause of action for specific performance of appellant's contract to purchase.

It is also unnecessary to determine the applicability to the facts of this case of the statutes which were cited by the trial court, and we refrain from an adjudication or expression of opinion thereabout. Rather, the judgment is affirmed upon the second ground relied upon, that is, that under the unusual facts of the nature and use of the property and the terms of the will relating to it, the transaction in its entirety was manifestly of great financial advantage to the estate and the trust and, therefore, to the beneficiaries other than the purchaser-trustee. The then full market value of the property went into the trust and the interests of the contingent remaindermen were transferred to it; the corpus of it was at once increased *pro tanto* and, perhaps of more value and importance, it was and is saved the heavy annual maintenance expense for the indefinite term of the remainder of the life of the widow. It would be hard to imagine stronger facts for authorization, now confirmation, of a sale of estate or trust property to a fiduciary of it. There is no question that the court will confirm by its judgment what it would have authorized upon proper application at the time. *Bacot v. Heyward,* 5 S. C. 441. *Geigers v. Kaigler,* 9 S. C. 401. *Pool v. Dial,* 10 S. C. 440. *Pickett v. Geer,* 156 S. C. 346, 153 S. E. 349.

There is an exhaustive annotation on the subject ■ of the right of an executor or administrator to purchase at his own sale in L. R. A., 1918B, 7, with footnote reviews of many of our cases. A briefer note in 1 A. L. R. 747 is concerned with the power of a testamentary trustee to buy at his own sale. Generally under the authorities, in the absence of statute, the rule invoked by the present appellant is equally applicable to both, as to other fiduciaries as well. *McCelvey v. Thomson*, 7 S. C. 185. It is said in the opening of the last cited annotation, 1 A. L. R. 747: "It is a general rule, well sustained by authority, that one who holds property in a fiduciary capacity cannot purchase that property at his own sale. This rule, which applies to trustees generally, such as executors and administrators, agents, corporate officers, etc., has been applied to testamentary trustees." This makes unimportant respondent's contention that the sale to the widow-executrix and her renunciation of right to further maintenance of the property was before the trust was "set up", unless perforce the cited statutes which, as said above, are not applied (or their applicability examined) because it is unnecessary for the purpose of this decision.

"It is a stern rule of equity that a trustee * * * cannot be both vendor and purchaser", *Imboden v. Hunter*, 23 Ark. 622, 79 Am. Dec. 116, but, without whittling the rule away, there may be justifiable exception under extraordinary facts which are found by a court of competent jurisdiction upon careful investigation and full representation of the *cestuis* or beneficiaries; and all of these conditions have been satisfactorily met in the case at bar. "The rule against the purchase of trust property by the trustee will not apply, according to the holding of many cases, where, under the particular circumstances of the case, the reason for the rule does not exist, as, for example, where there is no possibility of advantage to the trustee or prejudice to the trust estate from the transaction in question." 54 Am. Jur. 362, Trusts, sec. 456.

The South Carolina cases cited by appellant have been considered and we do not think that the authority of any of them requires reversal of the judgment under appeal, which we affirm. No useful purpose would be served by a review of them here. As often said, sound result of each such case depends on its own peculiar facts. Our decisions involving sales of trust property under direction of the court are collected in 18 S. C. Dig. 319 *et seq.,* Trusts, Par. 193½ *et seq.*

Equity has plenary jurisdiction and power in cases such as this and its decree binds contingent remaindermen, infant and adult, in being and unborn, if properly made parties, if possible, and competently represented, as here. Their contingent interests are not destroyed or impaired but transferred—in this case to the thereby enlarged trust *res* which was created by the will. *Bofil v. Fisher,* 3 Rich. Eq. 1, 55 Am. Dec. 627, and the many cases following it, some of which may be found in 11 S. C. Dig., Infants. Because it is unnecessary, appellant's contention that such relief is not within the scope of an action for declaratory judgment has not been considered; the second cause of action stated in the complaint was for specific performance, which is unquestionably equitable in nature, and the other issues presented upon appeal are germane to it and have accordingly been decided. Janney, who has contracted to purchase the plantation, alone appealed; he may be said to have been the principal defendant in the second cause of action, but the other litigants were parties to it also. Undoubtedly subject to the second cause, upon which the judgment is rested, he cannot complain of impropriety, if any, in the first. Of some similarity in this respect, and of the same result, is *Wingard v. Hennessee,* 206 S. C. 159, 33 S. E. (2d) 390.

Affirmed.

Baker, C. J., and Fishburne, Taylor and Oxner, JJ., concur.